IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LIBERTY INSURANCE UNDERWRITERS, )
INC., an Illinois corporation,   )
                                 )
            Plaintiff,           )
                                 )
     v.                          )          1:16CV1377
                                 )
BEAUFURN, LLC, a North Carolina  )
limited liability company;       )
and DOES 1-10,                   )
                                 )
                                 )
            Defendants.          )

**<u>MEMORANDUM OPINION AND ORDER</u>**

**OSTEEN, JR., District Judge**

Currently before the court are two motions for summary judgment. (Docs. 63, 65.) Plaintiff Liberty Insurance Underwriters, Inc., has moved for partial summary judgment on the issue of whether certain insurance and indemnification provisions are included in the underlying contracts between The Cheesecake Factory, Inc. ("TCF") and Defendant Beaufurn, LLC ("Beaufurn"). Plaintiff argues that TCF's terms were accepted and should govern each contract. Defendant Beaufurn has also moved for summary judgment and argues that all claims against it should be dismissed. Beaufurn contends that its order acknowledgments expressly rejected TCF's terms, which thus did not become part of the relevant contracts. For the reasons set

forth herein, this court finds that each motion should be granted in part and denied in part.

## I.  <u>**FACTUAL & PROCEDURAL BACKGROUND**</u>

On June 14, 2013, Janet Kinzler was injured when she fell from a high top chair while seated at a high top table with some colleagues at a TCF restaurant in Maryland. (First Am. Compl. ("Am. Compl.") (Doc. 52) ¶ 11.) TCF regularly purchases barstools from Beaufurn for use in its "restaurants across the country, including in its location at 7002 Arundel Mills Circle, Hanover, Maryland." (Denise Hall Declaration (Doc. 63-1) ¶ 4.) The chair from which Kinzler fell was "designed, manufactured and/or distributed by Beaufurn." (Am. Compl. (Doc. 52) ¶ 11.) TCF investigated the incident, concluded that Kinzler's injuries were most likely caused by her own actions, and returned the subject chair to service in its restaurant. (William Ivar Bongaerts Deposition (Doc. 63-5) at 24; Cook Dep. (Doc. 63-4) at 2.)

On March 18, 2014, Kinzler sued TCF in federal court in the Western District of Pennsylvania, alleging that TCF was negligent by "utilizing chairs that were unstable and subject to overturning" and by maintaining and failing to warn customers of slippery floors in its restaurant. (<u>Kinzler v. The Cheesecake Factory, Inc.</u> Am. Compl. (Doc. 52-2) ¶ 35.) Plaintiff alleged damages in an amount greater than $75,000.00. (<u>See</u> Am. Compl.

(Doc. 52-2).) TCF requested that Beaufurn defend TCF against Kinzler's claim and indemnify TCF for any resulting damages, pursuant to the terms of the purchase order for the subject chair. (Am. Compl. (Doc. 52) ¶ 19–20; TCF Demand Letter to Beaufurn (Doc. 52-3).) Beaufurn apparently passed this demand along to The Cincinnati Insurance Company ("CIC"), its primary and umbrella insurer.  (Am. Compl. (Doc. 52) ¶¶ 21–22.) Neither CIC nor Beaufurn agreed to defend or indemnify TCF in the Kinzler lawsuit. (Id. ¶¶ 21–24.)

TCF, Plaintiff (TCF's primary insurer), and ACE American Insurance Company (TCF's excess insurer), subsequently settled the Kinzler action for the total "sum of $4,375,000, of which LIU [Liberty Insurance Underwriters] paid the sum of $3,558,284.39, TCF paid $316,715.61 and ACE American paid $500,000." (Id. ¶ 29.) Plaintiff now seeks to recover from Beaufurn the following amounts: (1) $61,554.56 in defense costs paid directly by Plaintiff, (2) $183,284.39 in defense costs paid by TCF, which Plaintiff alleges "eroded TCF's self-insured retention under the ACE" policy, causing this policy to be depleted faster and causing spillover into Plaintiff's policy, and (3) $3,558,284.39, the Kinzler settlement amount paid directly by Plaintiff. (Id. ¶¶ 31, 45.)

Plaintiff originally brought suit in California state court. Defendants then removed the case to federal court in the Central District of California. (See generally Notice of Removal (Doc. 1).) Defendants moved to transfer the case to this district; that motion was granted by Judge Fernando M. Olguin November 30, 2016. (See Venue Order (Doc. 34).)

Beaufurn has moved for summary judgment. (See Doc. 63.) Beaufurn argues that the purchase orders and order acknowledgments contained conflicting insurance and indemnification provisions and that each expressly limited acceptance to its own terms.[1] Therefore, under Uniform Commercial Code ("UCC") 2-207, the insurance and indemnification terms in the purchase orders "were not part of the contract, so Beaufurn could not have breached those terms." (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.") (Doc. 64) at 13-14.)

---

[1] The "Terms and Conditions of Sale" attached to TCF's purchase orders required the "Seller," or Beaufurn, to carry commercial general liability insurance of a specified amount and type and to indemnify the "Buyer," or TCF, for damage "arising out of, or in connection with the use of any Product provided by Seller." (TCF Purchase Order No. 5616 ("TCF Purchase Order 5616") (Doc. 52-8) at 3.) Beaufurn's "Terms & Conditions of Sale," which were attached to the signature sheet for at least some transactions, provided that the "Seller," or Beaufurn, was obligated only to carry the minimum amount of insurance coverage required by law and that the "Purchaser," or TCF, agreed to indemnify Beaufurn for damage "arising out of the death or injury to person or damage to property resulting from the sale, marketing or use of the Products by Purchaser." (Beaufurn Pro Forma Invoices ("Beaufurn Pro Forma") (Doc. 65-11) at 14.)

Plaintiff has moved for partial summary judgment. (See Pl.'s Mot. for Partial Summ. J. (Doc. 65).) Plaintiff argues that the purchase orders were offers to purchase the subject chairs, that Beaufurn's order acknowledgments were valid acceptances not expressly conditioned on Plaintiff's acceptance of any additional terms, and that therefore the insurance and indemnification provisions in the purchase orders govern the relevant contracts. (See Pl.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. ("Pl.'s Mem.") (Doc. 66) at 15-20.) Plaintiff requests summary judgment on the issue of whether "the terms and conditions of TCF's purchase orders controlled the contract for the sale of goods" and an order "precluding Beaufurn from invoking its terms and conditions as a defense to Plaintiff's claims." (Pl.'s Mot. for Partial Summ. J. (Doc. 65) at 2.)

II. **GOVERNING LAW**

The parties agree that choice of law is immaterial to this case because both North Carolina and California have adopted the relevant UCC provision without change. (Compare Def.'s Mem. (Doc. 64) at 10, with Pl.'s Mem. (Doc. 66) at 13.) Though the ultimate result may be the same regardless of the law chosen, a proper choice-of-law analysis is still required.

A federal district court sitting in diversity applies the choice-of-law rules of the forum. See Klaxon Co. v. Stentor

-5-

Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). When either party
is granted transfer under 28 U.S.C. § 1404(a),[2] however, the
transferee court applies the choice-of-law rules of the
transferor court. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 243
n.8 (1981); see also Ferens v. John Deere Co., 494 U.S. 516, 519
(1990) (superseded by statute on other grounds); Volvo Constr.
Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 600 (4th
Cir. 2004). The rule in Piper and Ferens for Section 1404(a) and
choice-of-law is inapplicable in cases governed by valid forum
selection clauses. See Atl. Marine Constr. Co. v. U.S. Dist. Ct.
for W. Dist. of Tex., 571 U.S. 49, 65—66 (2013). As will be
discussed infra, TCF and Beaufurn had conflicting forum
selection clauses that were "knocked out" under California's
"battle of the forms provision." (See Venue Order (Doc. 34) at
6-7.) Therefore, in this case, there was no valid forum

---

[2] Transfer under Section 1404(a) is appropriate when venue
was first properly laid in the transferor district. Compare 28
U.S.C. § 1404(a), with § 1406(a); see also Van Dusen v. Barrack,
376 U.S. 612, 634 n.30 (1964). Though the district court in
California did not expressly state that venue was proper in the
Central District of California, (see generally Venue Order (Doc.
34)), that court did transfer this case under Section 1404(a)
and declined to rule on an argument that venue was not properly
laid, (id. at 14 n.13). As the Supreme Court has said, Section
1404(a) "operates on the premises that the plaintiff has
properly exercised his venue privilege." Van Dusen, 376 U.S. at
634. For these reasons, this court concludes that venue was
properly laid in the transferor district and that transfer was
appropriate under 1404(a).

selection clause, (see id.), and the matter was transferred to this court under Section 1404(a), (id. at 14-15). In light of these facts, the court concludes that California's choice-of-law rules apply.

California has adopted the governmental interest test for most of its conflict-of-laws issues. See, e.g., Reich v. Purcell, 67 Cal. 2d 551, 555-56 (1967). Under that approach, courts "must search to find the proper law to apply based upon the interests of the litigants and the involved states." Offshore Rental Co. v. Cont'l Oil Co., 22 Cal. 3d 157, 161 (1978), holding modified by I.J. Weinrot & Son, Inc. v. Jackson, 40 Cal. 3d 327 (1985). The first step in the governmental interest test is to determine if there is, in fact, a true conflict[3] between California law and foreign law. Washington Mut. Bank v. Superior Court, 24 Cal. 4th 906, 919 (2001). When there is "no material difference [between two laws], there is no choice-of-law problem and the court may proceed to apply California law." Frontier Oil Corp. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1465, as modified (Sept. 5, 2007).

---

[3] See Michael Traynor, Conflict of Laws: Professor Currie's Restrained and Enlightened Forum, 49 Cal. L. Rev. 845, 856 (1961) ("If the domestic policies of both states are the same, there is no true conflict of laws.").

As stated above, both California and North Carolina have adopted the UCC in its entirety, to include Section 2-207, the most relevant provision in this case. Comparison of the two states' UCC 2-207 provisions reveal that there is no "material difference" between them. Compare Cal. Com. Code § 2207, with N.C. Gen. Stat. § 25-2-207. For that reason, this court will specifically apply Cal. Com. Code § 2207, Frontier Oil Corp., 153 Cal. App. 4th at 1465,[4] and thus adopt the parties'

---

[4] In the realm of contract interpretation, some California courts have held that the governmental interest test does not supplant the interpretation instructions in Section 1646 of the California Civil Code. That provision states that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. Other courts, however, seem to disagree that Section 1646 overcomes the newer governmental interest test. See Strassberg v. New England Mut. Life Ins. Co., 575 F.2d 1262, 1263-64 (9th Cir. 1978) (per curiam); see also Arno v. Club Med Inc., 22 F.3d 1464, 1468 n.6 (9th Cir. 1994) (collecting cases and noting conflict). The Arno court pointed out that it was not necessary for it to resolve a conflict in state law since the outcome under either test was the same. Id.

This court is in the same position as the one in Arno. Even if this court applied Section 1646, California law would still result. Here, the purchase order was issued from California to North Carolina via e-mail, and the chairs were shipped to a Beaufurn warehouse in California prior to delivery. (See TCF Purchase Order No. 5614 (Doc. 52-6); Kathy Ann Daywalt Deposition ("Daywalt Dep.") (Doc. 65-8) at 26-27.) This court is satisfied that the contract was formed in California, either when TCF sent the purchase order or received the order acknowledgment. The place of performance was arguably also California; chairs were shipped from North Carolina to an

-8-

stipulation "that California law applies to the substantive contractual issues." (See Venue Order (Doc. 34) at 5.)

## III. **STANDARD OF REVIEW**

In reviewing a motion for summary judgment, this court must determine whether there remains a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "Once a defendant makes a properly supported motion for summary judgment, the burden shifts to the plaintiff to set forth specific facts showing that there is a genuine issue for trial." Sylvia Dev. Corp. v. Calvert Cty., 48 F.3d 810, 817 (4th Cir. 1995). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 654 (1962) (per curiam). If there is no genuine dispute about any fact material to the moving party's claim, then "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

"Advance location" in California where they were held until released by TCF to various TCF locations across the country. (Daywalt Dep. (Doc. 65-8) at 10.) Whether analyzing under place of performance or place of formation, California law would apply.

party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co.,
391 U.S. 253, 289-90 (1968) (stating that a dispute is not
genuine for summary judgment purposes when one party rests
solely on allegations in the pleadings and does not produce any
evidence to refute alternative arguments). This court must look
to substantive law to determine which facts are material — only
those facts "that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment." Anderson, 477 U.S. at 247.

In addition, "the mere existence of some alleged factual
dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment." Id. Ultimately,
"there is no issue for trial unless there is sufficient evidence
favoring the nonmoving party for a jury to return a verdict for
that party." Anderson, 477 U.S. at 249.

IV.  **LAW OF THE CASE DOCTRINE**

A.  **Prior Venue Order & Arguments**

Judge Olguin, in his order transferring this case to the
Middle District of North Carolina, thoroughly analyzed the
parties' competing forms under UCC 2-207. Judge Olguin concluded
that "neither TCF nor Beaufurn provided specific and unequivocal
assent to the other parties' additional terms and conditions"

-10-

and that these additional terms were thus "trimmed" from the contract. (Venue Order (Doc. 34) at 7.)

Beaufurn argues that, under the "law-of-the-case doctrine," Judge Olguin's analysis should control and apply with equal force to the insurance and indemnification provisions that are the subject of the motions for summary judgment. (Def.'s Resp. in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Def.'s Resp.") (Doc. 67) at 6-9.) Specifically, Beaufurn argues that "the California federal court explicitly held that all terms in conflict between the parties' two agreements were not part of the final contract" and that this holding should govern unless it is "clearly erroneous." (Id.)

Plaintiff argues that Judge Olguin's venue order is not the law of the case. First, Plaintiff asserts that the analysis of the forum selection and insurance/indemnification provisions is substantively different. (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. ("Pl.'s Reply") (Doc. 70) at 2-3.) Second, Plaintiff argues that this court has already rejected the California order as the law of the case because this court permitted Plaintiff to amend the complaint despite Defendants' argument that amendment was futile in light of Judge Olguin's order. (See id. at 3.) Third, Plaintiff contends that new evidence has now surfaced. (See id. at 4-5.) Specifically,

Plaintiff argues that the record before Judge Olguin may have suggested that Beaufurn initiated each transaction by sending inventory sheets that constituted offers to sell. However, Plaintiff argues that the deposition of Kathy Daywalt ("Daywalt"), Beaufurn's office manager responsible for the TCF relationship, revealed new material facts relating to the parties' course of dealing — because Daywalt testified that these inventory spreadsheets did not contain price or other forward-looking information, these sheets were not offers and the fact that Judge Olguin may have interpreted them as offers justifies a new analysis of the substantive issues. (<u>See</u> Pl.'s Reply (Doc. 70) at 4-5.)

Applying the law-of-the-case doctrine is a threshold issue in this matter. If Judge Olguin's analysis governs this court's decision on summary judgment, then this court can only conclude that the conflicting insurance and indemnification provisions drop out of the contracts. If, however, there is a valid reason not to apply some or all of Judge Olguin's analysis, then this court must conduct its own independent examination of the relevant contractual provisions.

B.  **Legal Framework**

"When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages

of the same case." <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983). And the Supreme Court has clearly explained "that the doctrine applies as much [and sometimes with even greater force] to the decisions of a coordinate court in the same case as to a court's own decisions" or those of the immediate appellate court. <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 816 (1988). The law of the case "doctrine does not preclude [a transferee court's] reconsideration of previously decided issues in extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." <u>In re City of Philadelphia Litigation</u>, 158 F.3d 711, 718 (3d Cir. 1998); <u>see also</u> <u>Arizona v. California</u>, 460 U.S. at 618 n.8 ("[I]t is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice."); <u>Sejman v. Warner-Lambert Co.</u>, 845 F.2d 66, 69 (4th Cir. 1988). The fact that a transferor court did not adequately explain its decision to apply a certain legal rule does not, by itself, render the law of the case inapplicable in future proceedings. <u>Christianson</u>, 486 U.S. at 817.

C.   **Analysis**

Here, Judge Olguin of the Central District of California ruled that neither party had clearly assented to the terms in the other party's boilerplate form, that the case fell under UCC 2-207(3), and that, under that rule, the conflicting forum selection provisions dropped out of the contracts. (Venue Order (Doc. 34) at 7.)

Judge Olguin's determination that this case falls within UCC 2-207(3) is equally applicable to whether any of the competing insurance or indemnification provisions became part of the contracts. First, Judge Olguin's decision to disregard the dueling form provisions and apply UCC 2-207(3) is exactly the type of legal rule that constitutes the law of the case. This decision was a necessary and integral step to reaching the ultimate transfer decision; it was not dicta and thus should apply with full force in later stages of the case barring any extraordinary circumstance. See City of Philadelphia Litigation, 158 F.3d at 718-20 (stating that, where a certain legal "determination was necessarily subsumed within the court's analysis of" a broader issue, that intermediate determination qualified as the law of the case).

Second, despite Plaintiff's arguments to the contrary, (see Pl.'s Reply (Doc. 70) at 1-2), the Supreme Court has clearly

explained that decisions of <u>coordinate</u> transferor district

courts are the law of the case and that the doctrine applies

with equal force to those decisions as to decisions of a

superior appellate court.[5] <u>Christianson</u>, 486 U.S. at 816. And

this court disagrees with <u>United States v. Lentz</u>, 384 F. Supp.

2d 934, 939 (E.D. Va. 2005), to the extent that case may be read

to impose additional hurdles beyond those set forth in

<u>Christianson</u> to applying prior coordinate court rulings as the

law of the case.[6] This court does not believe it would be proper

to disregard a coordinate court decision in the same case

addressing a substantive issue (as present here), outside of the

---

[5] While these issues usually arise in the context of re-evaluating the transfer decision itself, <u>see, e.g.,</u> <u>Christianson</u>, 486 U.S. at 816 ("[T]ransferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation."), there are powerful reasons to apply Judge Olguin's ruling even to a subsequent decision that is not directly related to venue. This court finds that, whenever possible, it should seek to maintain internal consistency of legal decisions within the same case to fulfill the parties' expectations and promote respect for the law. If this court disregarded Judge Olguin's ruling for anything less than an "extraordinary circumstance," the parties would be improperly subjected to inconsistent constructions of the same contractual arrangement; this might create future uncertainty about how such provisions will be interpreted. The three exceptions articulated in <u>Christianson</u> strike an appropriate balance between consistency and fairness.

[6] <u>Lentz</u> dealt with evidentiary rulings, which present a different question from the substantive legal ruling present here. This court finds nothing in <u>Lentz</u> to be inconsistent with its application of Judge Olguin's venue order.

three specific "extraordinary circumstances" listed in Christianson. This court will follow the Supreme Court's directive that the doctrine applies equally to coordinate court decisions.

This court also rejects Plaintiff's characterization of this court's prior order granting Plaintiff's motion to amend the complaint. When this court permitted Plaintiff to amend its complaint, the court stated: "Because the Central District of California was analyzing forum selection clauses, not the provisions at issue here, the court declines to adopt Defendants' view [that the venue order made the proposed amendments futile]." (Doc. 50 at 3 n.3.) At that time discovery was still ongoing, and this court was without the necessary information to find whether or not any exception to the law-of-the-case doctrine applied. While this court's order could perhaps have been drafted more clearly, futility is a high standard and, at that early stage of the proceedings, it is difficult to find that a proposed amendment is futile. See, e.g., Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986) ("Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient . . . on its face."). Daywalt had not yet been deposed, and at the time of this court's order, it was entirely possible that

new material evidence would come to light. This court merely found that the proposed amendments were not futile at that time and under the circumstances. This court did not disclaim future application of the law of the case in accordance with Christianson.

Plaintiff does not argue that Judge Olguin's decision was clearly erroneous or manifestly unjust, nor does Plaintiff identify any change in the supervening law of contract interpretation relevant to the UCC 2-207 analysis. Therefore, the only question is whether new or substantially different evidence justifies disregarding the law of the case and conducting independent legal analysis of the substantive issues. See City of Philadelphia Litigation, 158 F.3d at 718; Sejman, 845 F.2d at 69; see also Bishop v. Smith, 760 F.3d 1070, 1090 n.12 (10th Cir. 2014).

Evaluating all the evidence now before the court, Daywalt's deposition provides new, uncontroverted evidence that the Beaufurn signature sheet making the sale of goods "expressly conditioned upon" Beaufurn's additional terms, (see Beaufurn Pro Forma (Doc. 65-11) at 12), did not exist on or before January 15, 2007. (See Daywalt Dep. (Doc. 65-8) at 35–36, 41, 46–48, 90.) According to Daywalt, the order acknowledgments, or pro forma invoices, that were issued for purchase orders up to

and including Purchase Order ("P.O.") 3667 (Beaufurn Order No.
8144), stated only that the contract would be "subject to" or
"entered under" Beaufurn's standard terms and conditions.
(Daywalt Dep. (Doc. 65-8) at 46-47; Beaufurn Pro Forma (Doc.
65-11) at 2-3.) This new evidence was not before Judge Olguin
when he issued his venue order. The evidence is material because
the "subject to" or "entered under" language is, as a matter of
law, generally insufficient to make Beaufurn's acceptance
"expressly conditioned upon" TCF's assent to additional terms
within the meaning of UCC 2-207(1). See, e.g., Dorton v. Collins
& Aikman Corp., 453 F.2d 1161, 1167 (6th Cir. 1972).

This court, therefore, finds that extraordinary
circumstances in the form of new evidence exist to abrogate the
law of the case as to any purchase order dated on or prior to
January 15, 2007. This includes P.O. 2716 placed on June 29,
2006, (see TCF Purchase Order No. 2716 (Doc. 65-4); TCF Purchase
Order No. 3619 (Doc. 65-5) (placed on December 29, 2006);
Beaufurn Pro Forma (Doc. 65-11) at 2-3 (documenting TCF Purchase
Order No. 3667 placed on January 15, 2007).) The court will
proceed to substantive analysis based on the new evidence
demonstrating that Beaufurn sent only a pro forma invoice, and
not a signature sheet, to TCF for these orders.

As to the purchase orders dated after January 15, 2007, this court finds that Judge Olguin's decision to "trim" the conflicting form provisions and apply UCC 2-207(3) is the law of the case, that this decision was not clearly erroneous or unjust, and that no new evidence has been introduced that would materially impact this analysis. It appears Plaintiff did <u>not</u> argue before Judge Olguin that it had not received signature sheets for any relevant purchase orders. (<u>See, e.g.</u>, Rebecca Stobie Declaration (Doc. 17-9) (stating generally that signature sheets were not signed and returned to Beaufurn, implying that TCF <u>did</u> receive signature sheets for all orders but did not do anything with those sheets).) While Plaintiff maintains that UCC 2-207(3) should not apply even conceding the receipt of signature sheets, Plaintiff now argues that it is unclear whether signature sheets were received for any purchase order other than P.O. 5616. (<u>See</u> Pl.'s Mem. (Doc. 66) at 18-19.) But this merely represents the evolution of Plaintiff's legal arguments. There is no new, material evidence <u>proving</u> that

signature sheets were or were not received for the later

purchase orders.[7]

Plaintiff has made a stronger argument before this court

that signature sheets may not have been sent for these later

orders, based on both Daywalt's uncertainty, (see Daywalt Dep.

(Doc. 65-8) at 92-93), and the lack of signature sheets for

certain purchase orders in Beaufurn's records. But those facts

alone are insufficient to constitute an extraordinary

circumstance. Judge Olguin found that signature sheets were sent

for all purchase orders, that the acknowledgment constituted a

counteroffer, and that contracts were formed under UCC 2-207(3).

This court finds that new evidence renders his opinion erroneous

as to pre-January 15, 2007 purchase orders because Daywalt's

testimony indicates the separate Beaufurn signature sheet did

not exist at that time. While Daywalt expressed uncertainty

about the lack of signature sheets in Beaufurn's records for

certain later purchase orders, she also stated that "[s]tandard

procedure would be that we had a signature sheet with each

_____

[7] This court also finds that, even if Judge Olguin did in
fact consider the purchase orders to be acceptances of an
earlier offer to purchase from Beaufurn as Plaintiff suggests,
(see Pl.'s Reply (Doc. 70) at 4-5), this distinction ultimately
would not change the outcome. Assuming that TCF did receive
signature sheets for these later orders, in neither situation
would either party be deemed to have consented to the other's
additional provisions under UCC 2-207(1).

order." (Daywalt Dep. (Doc. 65-8) at 92.) The brewing dispute about the receipt of signature sheets for later orders is merely a dispute about how to characterize Daywalt's testimony; it is not new evidence that constitutes an extraordinary circumstance under Christianson. This court will apply the law-of-the-case doctrine to any post-January 15, 2007 purchase orders, adopt Judge Olguin's analysis and decision to apply UCC 2-207(3), and find that the conflicting insurance and indemnification provisions did not become part of those contracts.

## V.    UCC 2-207: BATTLE OF THE FORMS

### A.    Legal Framework

Under Cal. Com. Code § 2207:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

>> (a) The offer expressly limits acceptance to the terms of the offer;

>> (b) They materially alter it; or

>> (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the
existence of a contract is sufficient to establish a
contract for sale although the writings of the parties
do not otherwise establish a contract. In such case
the terms of the particular contract consist of those
terms on which the writings of the parties agree,
together with any supplementary terms incorporated
under any other provisions of this code.

Judge Olguin clearly and capably analyzed the legal

framework of UCC 2-207 and the battle of the forms, as adopted

in California under Cal. Com. Code § 2207. (See Venue Order

(Doc. 34) at 6-7.) This court will not revisit that analysis

here, and instead incorporates Judge Olguin's discussion of the

relevant legal standard in its entirety. See id.; see also

Steiner v. Mobil Oil Corp., 20 Cal. 3d 90, 98-108 (1977)

(explaining and applying § 2207 in the context of a "battle of

the forms" dispute).

B.   **Arguments & Analysis**

1.   **Pre-January 15, 2007 Purchase Orders**

This court agrees with Plaintiff that an acknowledgment

which simply purports to be made "under" or "subject to" the

offeree's standard terms and conditions, (see, e.g., Beaufurn

Pro Forma (Doc. 65-11) at 22), operates as an acceptance under

Dorton and forms a contract under UCC 2-207(1). See, e.g.,

Dorton, 453 F.2d at 1168 ("Although Collins & Aikman's use of

the words 'subject to' suggests that the acceptances were

conditional to some extent, we do not believe the acceptances

were "expressly made conditional . . . .'"); see also Luria
Bros. & Co. v. Pielet Bros. Scrap Iron & Metal, Inc., 600 F.2d
103, 113 n.12 (7th Cir. 1979); MHD-Rockland Inc. v. Aerospace
Distribs. Inc., No. CCB-13-2442, 2014 WL 31677, at *4 & n.4 (D.
Md. Jan. 3, 2014) (collecting cases). This language gave no
express indication that Beaufurn was unwilling to proceed with
the transaction unless TCF consented to additional terms.
Therefore, the pro forma invoice did not constitute a
counteroffer but rather accepted TCF's initial offer. TCF's
terms became part of the contract and Beaufurn's proposed
additions dropped out pursuant to UCC 2-207(2) because they
would have materially altered the agreement. See, e.g., Trans-
Aire Int'l, Inc. v. N. Adhesive Co., 882 F.2d 1254, 1261–63 (7th
Cir. 1989); C9 Ventures v. SVC-West, L.P., 202 Cal. App. 4th
1483, 1488 (2012) ("[A]n indemnification provision is deemed a
material alteration to an agreement as a matter of law.").

Beaufurn attempts to distinguish the Dorton holding because
that case did not involve a true "battle of the forms"
situation. (See Def.'s Resp. (Doc. 67) at 14–15.) Beaufurn
argues that "Dorton involved one party who purportedly sought to
impose an arbitration provision while the other party's document
was silent on the matter." (Id.) In this case, on the other
hand, the parties exchanged documents with separate, conflicting

contractual provisions. However, that factual distinction is
irrelevant to the specific point on which Dorton is most
persuasive: whether purporting to make an acceptance "subject
to" additional terms suffices to make that acceptance "expressly
conditional" and thus transforms it into a rejection and
counteroffer. Beaufurn offers no case law to support the
proposition that "subject to" means "expressly conditioned upon"
under UCC 2-207(1). Once the pro forma invoices are viewed as
acceptances rather than counteroffers, a plain reading of UCC
2-207(1) shows that the offeror's terms become part of the
contract. This court finds Dorton applicable and finds that
TCF's insurance and indemnification provisions became part of
the contractual agreement for the earlier purchase orders.

For all purchase orders prior to and including P.O. 3667,
this court finds the evidence in its entirety (accounting for
Daywalt's deposition testimony and other new evidence not before
Judge Olguin) sufficient to determine beyond any doubt that a
separate signature sheet was not sent to TCF. According to
Daywalt's uncontroverted testimony, the sheet did not exist at
that time. (See Daywalt Dep. (Doc. 65-8) at 35–36, 46–48.)
Therefore, as to the following orders — P.O. 2716 placed on
June 29, 2006, (see Doc. 65-4), P.O. 3619 placed on December 29,
2016, (see Doc. 65-5), and P.O. 3667 placed on January 15, 2007,

(see Beaufurn Pro Forma (Doc. 65-11) at 4–5) — and any other purchase orders placed prior to or on January 15, 2007, Beaufurn's response accepted TCF's terms pursuant to UCC 2-207(1). For those orders, this court finds that the terms and conditions attached to TCF's purchase orders controlled the contracts between TCF and Beaufurn and that summary judgment should be granted to Plaintiff on that issue. This court further finds that summary judgment should be granted to Plaintiff, precluding Beaufurn from using its own terms and conditions as a defense and striking Beaufurn's Fifteenth Affirmative Defense, as it relates to those specific purchase orders.

## 2. **Post-January 15, 2007 Purchase Orders**

This court will apply Judge Olguin's analysis to the post-January 15, 2007 purchase orders as the law of the case. (See Venue Order (Doc. 34) at 6–7.) Beaufurn's signature sheet made acceptance of TCF's offers expressly conditional on TCF's assent to new terms. Because TCF did not return a signed signature sheet and thus did not seasonably indicate acceptance of those new terms, no contract was formed until performance. That contract, pursuant to UCC 2-207(3), included only those terms on which the parties had expressly agreed — price and quantity, but not the conflicting insurance and indemnification provisions. While the law-of-the-case doctrine is sufficient to decide the

issue, this court will also briefly explain why it agrees with
Judge Olguin's analysis.

Plaintiff would have this court hold, under <u>Dorton</u>, that
even an order acknowledgment stating it is "expressly
conditioned upon" assent to new, material terms in the
acknowledgment (thus directly tracking the language of UCC
2-207(1)) will accept the offer and bind the offeree to the
terms contained in the offer. (<u>See</u> Pl.'s Mem. of Law in Opp'n to
Def.'s Mot. for Summ. J. ("Pl.'s Resp.") (Doc. 68) at 16 ("In
any event, the language of the above clause is insufficient
under <u>Dorton</u> to invalidate Beaufurn's acceptance because it
merely attempted to make Beaufurn's sale of any goods
<u>conditioned on Beaufurn's 'terms.'</u> This language did not make
Beaufurn's acceptance of TCF's purchase orders <u>expressly</u>
<u>conditioned on TCF's 'assent' to those terms.</u>").) This court
finds that Plaintiff is attempting to make a distinction without
substantive meaning, one that even the <u>Dorton</u> court was not
required to make to reach its holding.

Plaintiff argues that an acknowledgment which states it is
"expressly conditioned upon" new terms is not really "expressly
conditional" unless it unequivocally makes acceptance
conditional upon the counterparty's <u>assent</u> to those terms.
(Pl.'s Mem. (Doc. 66) at 17.) First, the acknowledgment in

_Dorton_ itself stated only that "the acceptances (or orders) were 'subject to all of the terms and conditions on the face and reverse side hereof, including arbitration, all of which are accepted by buyer.'" _Dorton_, 453 F.2d at 1167 (emphasis added). Any piece, therefore, of the _Dorton_ holding that might be read to require use of the terms "expressly conditioned upon" and "assent to," directly following one another and in that specific order, would be dicta because the court was considering an acknowledgment that looked significantly less like the actual language of UCC 2-207(1) than the acknowledgment at issue here.

Second, the Beaufurn signature sheet states: "The sale of any goods covered by this Order Acknowledgment is expressly conditioned upon the terms contained herein (including the Terms and Conditions on the attached and/or located on Seller's website at www.beaufurn.com). Purchaser's assent to [those] terms . . . shall be conclusively presumed . . . ." (Beaufurn Pro Forma (Doc. 65-11) at 12 (emphasis added).) Beaufurn's acknowledgment, therefore, does in fact reference the counterparty's assent to additional terms.

As other courts have observed, "an acceptance which precisely follows § 2-207(1) clearly forestalls contract formation." _PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C._, 225 F.3d 974, 979 (8th Cir. 2000); see

-27-

also Ionics, Inc. v. Elmwood Sensors, Inc., 110 F.3d 184, 185
189 (1st Cir. 1997); C. Itoh & Co. (Am.) Inc. v. Jordan Int'l
Co., 552 F.2d 1228, 1235-36 (7th Cir. 1977). And "[t]o require
the exact language of the UCC would be too formalistic and
inconsistent with the UCC's requirement that its provisions be
liberally construed." White v. Consol. Indus., Inc. v. McGill
Mfg. Co., 165 F.3d 1185, 1191 (8th Cir. 1999); see also Ralph
Shrader, Inc. v. Diamond Int'l Corp., 833 F.2d 1210, 1215 & n.4
(6th Cir. 1987) (finding that an acknowledgment which stated
additional terms and provided that those terms "are the only
ones upon which we will accept orders" was expressly
conditional; rejecting the argument that language must exactly
mimic UCC 2-207(1)).

Beaufurn's signature sheet used the words "expressly
conditioned upon" and referenced TCF's "assent" to additional
terms. This court finds that the signature sheet language is
sufficiently similar to UCC 2-207(1) to make Beaufurn's
acceptance of the offer "expressly conditional" on TCF's assent
to new material terms. Therefore, Beaufurn's later
acknowledgments were counteroffers that rejected TCF's
boilerplate provisions and brought the parties into the realm of
UCC 2-207(3).

For those purchase orders dated after January 15, 2007 —
P.O. 5597 dated December 3, 2007, (see Doc. 65-3), P.O. 5614
dated December 3, 2007, (see Doc. 52-6), P.O. 5615 dated
December 3, 2007, (see Doc. 52-7), P.O. 5616 dated December 3,
2007, (see Doc. 52-8), and any other such purchase orders — this
court finds that neither party's insurance or indemnification
provisions became part of the contractual agreement. Beaufurn,
therefore, is entitled to summary judgment for any claims
premised upon a breach of those provisions. For purchase orders
dated after January 15, 2007, all claims against Beaufurn based
upon the alleged breach of the insurance or indemnification
provisions in TCF's terms and conditions will be dismissed (the
first, second, tenth, and eleventh causes of action).

## VI.  **MISCELLANEOUS ISSUES**

Two issues remain for this court to address. First is
Plaintiff's claim for equitable subrogation; this claim is
allowed to proceed. Second is the issue of alleged defendants
John Does 1-10. Though Defendant Beaufurn did not move for
summary judgment on the counts related to the Doe defendants
(claims 7, 8, and 9), those counts are dismissed for the reasons
stated below.

## A.    Equitable Subrogation Claim

### 1.    Legal Framework & Arguments

Beaufurn further argues that the third cause of action,
Plaintiff's claim for equitable contribution or subrogation
against Beaufurn, should be dismissed because "Plaintiff either
insufficiently pleaded and cannot maintain that cause of action,
and/or Plaintiff has not and cannot present evidence
demonstrating Beaufurn's fault or negligence in the underlying
lawsuit." (Def.'s Mem. (Doc. 64) at 22.) Plaintiff responds that
"TCF's decision to not draw Beaufurn into the Kinzler Action"
did not absolve Beaufurn of liability for the chair that
allegedly caused Kinzler's injuries, that the third cause of
action is a proper subrogation claim, and that "conflicting
expert opinions" regarding whether the subject chair was
negligently designed by Beaufurn preclude summary judgment on
the claim. (Pl.'s Resp. (Doc. 68) at 18–22.) Beaufurn replies
that "any fault-based equitable subrogation claim against
Beaufurn must fail" because Plaintiff cannot identify above a
50% probability which specific chair caused Kinzler's injury.
(Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J.
("Def.'s Reply") (Doc. 69) at 11-12.)

As one California court explained,

> [e]quitable contribution permits reimbursement to the
> insurer that paid on the loss for the excess it paid

> over its proportionate share of the obligation, on the theory that the debt it paid was equally and concurrently owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk.

Fireman's Fund Ins. Co. v. Md. Cas. Co., 65 Cal. App. 4th 1279, 1293 (1998) ("Fireman's 1998"). "The reciprocal rights and duties of multiple insurers which cover the same event do not arise out of contract, for their agreements are not with each other" but rather with the insured party (here, TCF). Certain Underwriters at Lloyds, London v. Arch Specialty Ins. Co., 246 Cal. App. 4th 418, 428-29 (2016). Equitable contribution "exists independently of the rights of the insured . . . and assumes the existence of two or more valid contracts of insurance covering the particular risk of loss and the particular casualty in question." Fireman's 1998, 65 Cal. App. 4th at 1295.

Equitable contribution claims are separate and distinct from equitable subrogation claims, where an insurer stands in the shoes of the insured and brings a derivative suit "against the party legally and primarily responsible for the loss." Id. at 1295-96. "Equitable subrogation permits a party who has been required to satisfy a loss created by a third party's wrongful act to step into the shoes of the loser and pursue recovery from the responsible wrongdoer." Fireman's Fund Ins. Co. v. Md. Cas. Co., 21 Cal. App. 4th 1586, 1595-96 (1994) ("Fireman's 1994").

"The subrogated insurer . . . has no greater rights than the insured and is subject to the same defenses assertable against the insured." Reliance Nat'l Indem. Co. v. Gen. Star Indem. Co., 72 Cal. App. 4th 1063, 1078 (1999).

> When an insurer seeks equitable subrogation after it has paid a claim for an insured, the insurer must establish that (1) the insured suffered a loss for which the defendant is liable, either (a) because the defendant is a wrongdoer whose act or omission caused the loss or (b) because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (2) the insurer has compensated the insured for the loss for which the defendant is liable; (3) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted had it not been compensated by the insurer; (4) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (5) justice requires that the loss should be shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (6) the insurer's damages are in a stated sum, usually the amount paid to its insured.

Fireman's Fund Ins. Co v. Wilshire Film Ventures, Inc., 52 Cal. App. 4th 553, 555–56 (1997).

Plaintiff labeled the third cause of action "Equitable Contribution," (see Am. Compl. (Doc. 52) ¶¶ 46–49), leading Beaufurn logically to conclude that the claim most likely alleged equitable contribution, (see Def.'s Mem. (Doc. 64) at 16). However, in its response to Beaufurn's motion for summary judgment, Plaintiff cited Fireman's 1998 for the difference between an equitable contribution and subrogation claim and

argued that the third cause of action is an equitable subrogation claim. (Pl.'s Resp. (Doc. 68) at 18–19.) This court finds that Plaintiff intended to bring an equitable subrogation claim against Beaufurn: Plaintiff alleges that Beaufurn's negligence caused Kinzler's injury, that TCF was forced to compensate Kinzler for the harm caused by this negligence, and that equity demands Plaintiff (standing in the shoes of TCF) should be compensated by Beaufurn for the loss.

Once Plaintiff clarified that it intended to bring an equitable subrogation claim, Beaufurn argued that such a claim is precluded because there is no dispute of material fact as to whether Beaufurn is "a wrongdoer whose act or omission caused the loss" to TCF that Plaintiff now attempts to recover. (See Def.'s Reply (Doc. 69) at 12 ("There were other possible causes unrelated to the design of the chair, such as the way Kinzler sat, the movement of her body on the chair, and the condition of the floor.").) Specifically, based on the injured customer's expert testimony provided in the Kinzler matter, Beaufurn argues "there was just a 10% chance Kinzler was sitting on a chair with issues," (id.), and that Plaintiff therefore cannot establish to the required degree of certainty that the "allegedly defective product was actually the product that caused harm to a plaintiff." (Id. at 11.) Because even Kinzler's own expert

conceded in that litigation that only three out of twenty-nine chairs might be defective, and because there were other possible causes of Kinzler's fall, Beaufurn argues that "the jury would be left with mere speculation as to what product caused the plaintiff to be injured." (Id. at 12.) Plaintiff, on the other hand, points to "[t]he conflicting expert opinions" in the underlying case and argues that those opinions illustrate a dispute of material fact that precludes summary judgment. (Pl.'s Resp. (Doc. 68) at 21.)

## 2. **Analysis**

This court understands Beaufurn's argument as follows: there is no dispute of material fact regarding whether an allegedly defective chair manufactured by Beaufurn caused Kinzler's injury because the facts uncovered in the Kinzler litigation all point strongly to other causes and because TCF argued in the Kinzler litigation that the chairs were not defective. First, this court does not accept Beaufurn's contention that proximate cause requires a showing that the allegedly defective product "more likely than not" caused the injury. (See Def.'s Reply (Doc. 69) at 11–12.) Rather, California courts have consistently held that: (1) proximate cause normally requires the defendant's action be a but-for cause of the harm and liability be consistent with public policy

considerations, see State Dep't of State Hosps. v. Superior Court, 61 Cal. 4th 339, 352–53 (2015), and (2) when there are concurrent independent causes, proximate cause requires that the defendant's actions be a "substantial factor" in causing the injury, see, e.g., Mitchell v. Gonzales, 54 Cal. 3d 1041, 1052–54 (1991). Further, "[o]rdinarily, proximate cause is a question of fact which cannot be decided as a matter of law from the allegations of a complaint." Weissich v. Cty. of Marin, 224 Cal. App. 3d 1069, 1084 (1990).

To this court, neither test described above would require a showing that a manufacturing defect in the chairs "more likely than not" caused Kinzler's fall. And, in any event, this court is not satisfied that proximate cause should be decided as a matter of law in this case so long as there is a dispute of material fact over whether a defective chair caused the injury. On the contrary, the very outcome of the Kinzler litigation suggests that there is at least some outstanding dispute of material fact regarding whether the subject chairs were or are defective. Kinzler submitted expert reports in that case stating, among other things, that "the front-to-back placement of the seats over the front legs" was abnormal and unstable and, when combined with the slippery floor, caused Kinzler to fall.

(See <u>Kinzler v. The Cheesecake Factory, Inc.</u>, No. 2:14-cv-346-MRH (W.D. Pa.) (Doc. 23-1) at 8.)

TCF proffered competing expert testimony stating that "[t]he cause of Ms. Janet Kinzler's fall was her sliding off the chair while she was adjusting herself, as opposed to the chair kicking out while she was toasting." (See <u>id.</u> (Doc. 49-1) at 19.) But TCF neither moved for nor obtained summary judgment on that issue; in fact, it appears from the docket that the parties were preparing for trial at the time they settled.

Second, this court does not believe that any of TCF's representations in the Kinzler litigation should bind Plaintiff here. "When the insured makes affirmative statements or admissions about the facts of his claim, particularly those facts within the insured's own knowledge, it may be appropriate to hold that the subrogated insurer is bound by those statements or admissions" in a subsequent subrogation claim. <u>Great Am. Ins. Cos. v. Gordon Trucking, Inc.</u>, 165 Cal. App. 4th 445, 452 (2008). Here, however, any statement or admission by TCF is based on "matters not within [its] personal knowledge" — namely, the design and construction of Beaufurn's bar stools. <u>Id.</u> TCF has no specialized knowledge of Beaufurn's design and manufacturing process. Rather, it merely engaged an expert to examine the subject chairs in the same way that Kinzler did. The

fact that TCF's expert reached a certain conclusion should not bind Plaintiff, where there was no final adjudication or release of liability in the underlying action. See id.

While Beaufurn may ultimately be correct "that there is nothing defective about the subject barstool . . . or any other barstools of the same or similar type," this court cannot grant summary judgment solely on the basis of "strong evidence" when any material fact remains legitimately in dispute. (Def.'s Mem. (Doc. 64) at 21.) This court finds that Beaufurn's motion for summary judgment on the third cause of action should be denied.

## B.    Doe Defendants

Plaintiff also brings three separate causes of action against ten unidentified defendants (John Does 1–10). (See Am. Compl. (Doc. 52) ¶¶ 68–82.) John Does 1–10 are alleged to be excess, umbrella or other insurers of Beaufurn. (Id. ¶¶ 8–9.) Neither party addresses these claims in its motion for summary judgment. Because this case has proceeded through discovery without identification of John Does 1–10, the claims are now subject to dismissal. See Hindes v. F.D.I.C., 137 F.3d 148, 155 (3d Cir. 1998) ("The case law is clear that fictitious parties must eventually be dismissed, if discovery yields no identities, and that an action cannot be maintained solely against Doe defendants.") (internal citations and punctuation omitted); see

also <u>Johnson v. City of Ecorse</u>, 137 F. Supp. 2d 886, 892 (E.D. Mich. 2001). While Beaufurn has not specifically moved for summary judgment on these claims, this court finds that the seventh, eighth and ninth causes of action should be dismissed.

**VII.** <u>**CONCLUSION**</u>

For the foregoing reasons, this court finds that Plaintiff's motion for partial summary judgment should be granted in part and denied in part and that Beaufurn's motion for summary judgment should be granted in part and denied in part.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment, (Doc. 65), is **GRANTED IN PART AND DENIED IN PART**, in that the motion is **GRANTED** as to all sales conducted pursuant to purchase orders dated prior to or on January 15, 2007, and **DENIED** as to all sales conducted pursuant to purchase orders dated after January 15, 2007.

**IT IS FURTHER ORDERED** that Defendant Beaufurn, LLC's Motion for Summary Judgment, (Doc. 63), is **GRANTED IN PART AND DENIED IN PART**, in that the motion is **DENIED** as to all sales conducted pursuant to purchase orders dated prior to or on January 15, 2007, **GRANTED** as to all sales conducted pursuant to purchase orders dated after January 15, 2007, and **DENIED** as to Plaintiff's Third Cause of Action.

**IT IS FURTHER ORDERED** that the Seventh, Eighth and Ninth Causes of Action are hereby **DISMISSED**.

A partial judgment reflecting this memorandum opinion and order will be entered contemporaneously herewith.

This the 23rd day of September, 2019.

_____
United States District Judge