IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
LIBERTY INSURANCE UNDERWRITERS,    )
INC.,                              )
                                   )
              Plaintiff,           )
                                   )
       v.                          )     1:16CV1377
                                   )
BEAUFURN, LLC,                     )
                                   )
                                   )
              Defendant.           )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before the court is the Motion for Partial Reconsideration pursuant to Fed. R. Civ. P. 54(b) filed by Defendant Beaufurn, LLC ("Beaufurn"). (Doc. 79.) Beaufurn asks this court to reverse its decision denying Beaufurn's Motion for Summary Judgment as to Plaintiff Liberty Insurance Underwriters, Inc.'s ("Liberty") equitable subrogation claim. (Id. at 1.)

This case stems from an injury incurred by Janet Kinzler when she fell from a chair at a Cheesecake Factory location in Maryland and suffered serious injuries. (Memorandum Opinion and Order ("Mem. Op. & Order") (Doc. 76) at 2.)[1] Liberty, the Cheesecake Factory's primary insurer, is suing Beaufurn, the

---

[1] The court incorporates its factual background from its Memorandum Opinion and Order filed September 23, 2019. (Doc. 76.)

company that sold the chairs to the Cheesecake Factory. (Id. at 2-3.) Beaufurn argues that this court misunderstood its summary judgment arguments regarding Liberty's equitable subrogation claim. The argument that Beaufurn claims the court misunderstood is summarized by Beaufurn as follows:

> (1) [Liberty] cannot identify the barstool on which Ms. Kinzler was sitting immediately prior to her fall, because it was inspected and then placed back into use by The Cheesecake Factory ([Liberty's] subrogor) and was never identified by Ms. Kinzler or anyone else; (2) [Liberty] has presented no evidence that all, or even most, of the barstools at the restaurant were defective; and (3) therefore, [Liberty] does not have sufficient evidence from which a jury could conclude without speculation that a defective barstool was a proximate cause of Ms. Kinzler's injuries.

(Def.' Br. in Supp. of Mot. for Partial Reconsideration ("Def.'s Br.") (Doc. 80) at 5.)

The court begins by acknowledging that it did not directly address Beaufurn's argument that "Plaintiff cannot identify the barstool on which Ms. Kinzler was sitting prior to her fall, nor can [The Cheesecake Factory]." (Doc. 64 at 18.)[2] Though the court

---

[2] The argument was before the court and was rejected, (see Doc. 69 at 11-12), but the court will expressly and briefly address this argument in this order, but see Garey v. James S. Farrin, P.C., No. 1:16CV542, 2018 WL 6003546, at *2 (M.D.N.C. Nov. 15, 2018); Broadvox-CLEC, LLC v. AT & T Corp., 98 F. Supp. 3d 839, 850 (D. Md. 2015) ("Notably, a motion for reconsideration is not a license for a losing party . . . to get a second bite at the apple." (internal quotation marks omitted)); Jiangment Kinwai Furniture Decoration Co. v. IHFC Props., LLC, No. 1:14-CV-689, 2015 WL 12911532, at *1 (M.D.N.C. May 8, 2015) ("[T]he Court will not reward or countenance second bites at the apple.").

- 2 -

did not address this argument head on, it did note that there was a genuine dispute about whether a defect in the chair Ms. Kinzler used caused her injury, or if other factors caused her fall. (Mem. Op. & Order (Doc. 76) at 34–37.) Still, the court will briefly and directly address Beaufurn's argument.

Beaufurn's argument boils down to one issue: since the exact chair Ms. Kinzler sat in cannot be identified, can a jury reasonably conclude, from Liberty's proffered expert testimony, that Ms. Kinzler was sitting in an allegedly defective chair? Liberty offers an expert report that identifies certain Beaufurn chairs in The Cheesecake Factory location as more unstable than others; this report, they argue, is sufficient to create a genuine dispute as to whether Ms. Kinzler sat in a defective chair. In its reply brief, and for the first time, Beaufurn now also challenges Liberty's expert report. Liberty filed a surreply addressing those issues.

The court begins by discussing whether Liberty's expert report is sufficient to create a genuine dispute as to the material fact of whether Ms. Kinzler sat in an allegedly defective chair. The court finds that the report is sufficient and that there is a genuine dispute as to that fact. Second, the court briefly addresses Beaufurn's late argument that the report is not proper for a Rule 56 motion. The court disagrees.

- 3 -

# I. **WHETHER THE REPORT CREATES A GENUINE DISPUTE**

"The court's denial of summary judgment is an interlocutory order. Thus, this court 'may revisit i[t] . . . at any time prior to final judgment under . . . its inherent authority.'" Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005) (quoting United States v. Duke Energy Corp., 218 F.R.D. 468, 473-74 (M.D.N.C. 2003)); see also Fed. R. Civ. P. 54(b). However,

> [a] motion for reconsideration under rule 54(b) is "appropriately granted only in narrow circumstances: (1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent manifest injustice." Pender v. Bank of Am. Corp., No. 3:05-CV-238-MU, 2011 WL 62115, at *1 (W.D.N.C. Jan. 7, 2011). On the other hand, a motion to reconsider is improper where "it only asks the Court to rethink its prior decision, or presents a better or more compelling argument that the party could have presented in the original briefs on the matter." Hinton v. Henderson, No. 3:10cv505, 2011 WL 2142799, at *1 (W.D.N.C. May 31, 2011) (internal quotations and citation omitted). See also Directv, Inc. v. Hart, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004) (holding that motion to reconsider is not proper to "merely ask[] the court to rethink what the Court had already thought through — rightly or wrongly") (internal citations and quotations omitted).

Hartzman v. Wells Fargo & Co., No. 1:14CV808, 2016 WL 6810943, at *1 (M.D.N.C. June 28, 2016). "[T]he discretion Rule 54(b) provides is not limitless. For instance, courts have cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017). "The law-of-the-case doctrine

- 4 -

provides that in the interest of finality, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Id. (quoting TFWS, Inc. v. Franchot, 572 F.3d 186, 191 (4th Cir. 2009)).

The court denied Beaufurn's motion for summary judgment on Liberty's equitable subrogation claim. (Mem. Op. & Order (Doc. 76) at 38.) "Beaufurn requests reconsideration of that denial on the grounds that the Court misunderstood Beaufurn's position and misapprehended or misapplied applicable California law," and that the court's refusal to reverse its denial would "work a manifest injustice" against Beaufurn. (Def.'s Br. (Doc. 80) at 1–2.)

The material facts in this case are determined by the state law governing the equitable subrogation claim: "[a]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). California law, the substantive law governing the case, (Mem. Op. & Order (Doc. 76) at 8–9), determines what facts are material.

Case 1:16-cv-01377-WO-LPA   Document 84   Filed 06/10/20   Page 5 of 21

Whether Ms. Kinzler actually sat in a defective chair[3] is a material fact as to the equitable subrogation claim. See Fireman's Fund Ins. Co v. Wilshire Film Ventures, Inc., 52 Cal. App. 4th 553, 555–56 (1997). "When an insurer seeks equitable subrogation after it has paid a claim for an insured, the insurer must establish that (1) the insured suffered a loss for which the defendant is liable, . . . (a) because the defendant is a wrongdoer whose act or omission caused the loss . . . ." Id. at 555. If there is no evidence from which a reasonable juror could conclude that Ms. Kinzler sat in one of the allegedly defective chairs, then a jury could not reasonably conclude that Beaufurn's alleged negligence was the proximate cause of Ms. Kinzler's injury. Therefore, Beaufurn would be entitled to summary judgment since there is no evidence supporting the first element of an equitable subrogation claim under California law.

Though California law identifies the material facts, whether summary judgment is appropriate is a question of federal procedural law. Util. Control Corp. v. Prince William Constr. Co., 558 F.2d 716, 720 (4th Cir. 1977) ("[I]t has repeatedly been held that federal procedural standards govern whether

---

[3] Beaufurn also contests whether any of the chairs were defective. (See Def.'s Br. (Doc. 80) at 6 n.5.)

summary judgment is appropriate in any case."); see also Carson v. ALL Erection & Crane Rental Corp., 811 F.3d 993, 998 (7th Cir. 2016) ("Federal courts may grant summary judgment under Rule 56 on concluding that no reasonable jury could return a verdict for the party opposing the motion, even if the state would require the judge to submit an identical case to the jury." (quoting McEwen v. Delta Air Lines, Inc., 919 F.2d 58, 60 (7th Cir. 1990))); Shropshire v. Laidlaw Transit, Inc., 550 F.3d 570, 573 (6th Cir. 2008); Reinke v. O'Connell, 790 F.2d 850, 851 (11th Cir. 1986);[4] Nunez v. Superior Oil Co., 572 F.2d 1119, 1123 n.5 (5th Cir. 1978).

There is a genuine dispute of material fact where "[t]he disputed facts . . . [are] material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact . . . [is] adequate to support a jury verdict." Thompson Everett, Inc. v. Nat'l Cable Advert., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). The evidence offered "need not be conclusive on the issues

_____

[4] Reinke v. O'Connell dealt with expert opinions and summary judgment. See Reinke, 790 F.2d at 850. The Eleventh Circuit reversed a district court that erroneously applied a Georgia rule in deciding if summary judgment was appropriate. Id. at 850–51. Rather than applying the Georgia rule, which required medical malpractice plaintiffs to counter defense experts with their own, the Eleventh Circuit held that the district court should have applied the standard in Fed. R. Civ. P. 56. Id.

- 7 -

presented in the litigation, but it must sufficiently indicate the existence of facts which are disputed by the parties and which are material to the litigation to defeat [a summary judgment] motion." Barnes v. McDowell, 848 F.2d 725, 734 (6th Cir. 1988); see Lambert v. Peri Formworks Sys., Inc., 723 F.3d 863, 869 (7th Cir. 2013) (noting that a Title VII plaintiff can survive summary judgment without providing "conclusive" evidence that a phrase was used as a racial slur); cf. Barton v. United States, 407 F.2d 1155, 1158 (10th Cir. 1969) (noting, in the criminal law context, that "[c]ircumstantial evidence need not conclusively exclude every other reasonable hypothesis, nor negative all possibilities, except guilt" (citing Holland v. United States, 348 U.S. 121, 139 (1954))).

However, "if the evidence is 'merely colorable' or 'not significantly probative,' it may not be adequate to oppose entry of summary judgment." Thompson Everett, 57 F.3d at 1323 (quoting Anderson, 477 U.S. at 249–50). "The non-moving party 'cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" Zenith Data Sys. Corp. v. Elec. Data Sys. Corp., 131 F.3d 139, 1997 WL 755417, at *10 (4th Cir. 1997) (unpublished table decision) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)). Further, "proof of causation must be such as to suggest 'probability' rather than mere 'possibility,' precisely to guard

- 8 -

against raw speculation by the fact-finder." <u>Sakaria v. Trans
World Airlines</u>, 8 F.3d 164, 172–73 (4th Cir. 1993).[5] Expert
testimony can be used to establish causation, but in assessing
such testimony, a court must determine if it would:

> permit jurors to draw one of two reasonably probable
> inferences as to causation, see <u>Bryan v. Merrill Lynch,
> Inc.</u>, 565 F.2d 276, 281 (4th Cir. 1977); <u>Ford Motor Co.
> v. McDavid</u>, 259 F.2d 261, 266 (4th Cir. 1958), or if
> the jurors would be choosing among "merely one of
> several equally surmisable possibilities . . . 'on the
> basis of sheer speculation.'" [<u>Charleston Area Med.
> Ctr., Inc. v. Blue Cross & Blue Shield Mut. of Ohio,
> Inc.</u>, 6 F.3d 243, 247 (4th Cir. 1993) (quoting <u>Lovelace
> v. Sherwin-Williams Co.</u>, 681 F.2d 230, 242 (4th Cir.
> 1982));] see also <u>Textron, Inc. v. Barber-Colman
> Co.</u>, 903 F. Supp. 1558, 1565 (W.D.N.C. 1995) ("Thus,
> the inferences a court is asked to draw by expert
> testimony must be reasonable in light of competing
> inferences."). If jurors could determine with
> reasonable probability that Defendants' acts or
> omissions were a proximate cause of Plaintiffs'
> injuries, the matter is for the jury to decide;
> otherwise, summary judgment is
> appropriate. See <u>Sakaria</u>, 8 F.3d at 172.

<u>True v. Pleasant Care, Inc.</u>, No. 2:97CV20-DE, 2000 WL 33706383,
at *2 (E.D.N.C. Jan. 3, 2000).

Beaufurn argues that Liberty cannot identify the exact
chair used by Ms. Kinzler. That is true. However, if the

---

[5] The <u>Sakaria</u> court found a medical doctor's expert opinion
about the cause of a heart attack was not enough to create a
genuine dispute of material fact. <u>Sakaria</u>, 8 F.3d at 171. That
report, however, was based on uncorroborated hearsay. <u>Id.</u> at 168.
Once the report's basis was reduced to admissible evidence only,
the court found its conclusions did not support a "probability"
conclusion. See <u>id.</u> at 172.

- 9 -

evidence offered by Liberty is sufficiently probative[6] of whether
Ms. Kinzler was sitting in one of the allegedly defective
chairs, then a jury could rely on it in concluding that
Ms. Kinzler had in fact sat in a defective chair, thus creating
a genuine dispute of a material fact. Beaufurn argues the expert
testimony is not sufficiently probative so as to create a
genuine dispute.

Liberty puts forward the expert report of Mr. George J.
Wharton. (Report of Mr. George J. Wharton ("Wharton Report")
(Doc. 68-2 at 44-51) attached to Ex. 1, Deposition of William
Ivar Bongaerts (Doc. 68-2).) Mr. Wharton is a professional
engineer who examined some of the barstool chairs at The
Cheesecake Factory location where Ms. Kinzler was injured. (Id.
at 44, 51.) Mr. Wharton also reviewed the depositions of
witnesses to Ms. Kinzler's accident; those witnesses noted that,
as Ms. Kinzler was leaning forward in her chair to make a toast,
her chair "slid out backwards behind her and Ms. Kinzler fell
backward onto the floor." (Id. at 45.) Mr. Wharton identified
three chairs in the restaurant that "tipped up on the front legs
easily" when he leaned forward; they tipped even as he moved his
weight forward, but kept his back on the backrest of the chair.

---

[6] "Evidence is probative if it tends to prove or actually
does prove a proposition." United States v. Brady, 26 F.3d 282,
287 (2d Cir. 1994).

(Id.) The other chairs tested "did not tip forward." (Id.) After examining the less stable chairs more closely, Mr. Wharton found that those chairs had structural differences that, he concluded, contributed to their relative instability. (Id. at 50.) The chairs with less stability had their seats positioned further forward over the legs; they also had pads on the bottom of the legs that reduced friction with the floor. (Id. at 50-51.) These differences led Mr. Wharton to conclude, "to a reasonable degree of engineering certainty," that some chairs were more prone to tipping forward than others when an occupant shifted her weight forward. (See id. at 51.)

Taking the evidence in a light most favorable to Liberty, the Wharton Report is not "mere speculation or the building of one inference upon another." Beale, 769 F.2d at 214. Instead, it is evidence upon which "a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248, because its conclusions make it "probable," not just "possible," that Ms. Kinzler was seated in an allegedly defective chair, Sakaria, 8 F.3d at 172. A jury could rely on the Wharton Report in concluding that Ms. Kinzler was seated in one of the defective chairs, because it describes a cause-and-effect sequence very similar to that experienced by Ms. Kinzler. Mr. Wharton identified three chairs out of twenty-nine that were more prone to tipping forward than others and that tipped forward with

- 11 -

relatively little forward movement. Though the report does not conclusively establish that Ms. Kinzler was sitting in one of the defective chairs, see Barnes, 848 F.2d at 734,[7] it is probative, circumstantial evidence that Ms. Kinzler was sitting in a defective chair since her chair tipped forward in a similar manner and under similar circumstances as Mr. Wharton's testing. With the Wharton Report's conclusions, the jury is not being asked to choose from several equally likely inferences, but instead has evidence making it more probable that it was an allegedly defective chair that caused Ms. Kinzler's injuries. Beaufurn will, of course, have a chance to rebut this evidence with other factors that possibly led to Ms. Kinzler's fall. At this time, however, there is a genuine dispute of material fact as to whether Ms. Kinzler sat in an allegedly defective chair sold by Beaufurn.

The court underscores this point by considering the background law against which the jury will reach its verdict. Though the question of whether summary judgment is appropriate is a question of federal procedural law, the jury will consider the facts in light of California law. California law is therefore helpful in assessing the probative value of the

---

[7] Despite Beaufurn's contention, the report need not conclude that Ms. Kinzler was sitting in one of the chairs to create a genuine dispute as to this material fact.

Wharton Report. See Crinkley v. Holiday Inns, Inc., 844 F.2d
156, 163–65 & n.2 (4th Cir. 1988) (discussing North Carolina law
on proximate causation but using Fourth Circuit standards of
probability to determine whether summary judgment was
appropriate). Beaufurn cites several California cases to argue
that the inability to identify the exact chair is fatal at this
stage of the proceedings. (Def.'s Br. (Doc. 80) at 7–12.) The
court is not persuaded. The cases cited by Beaufurn stand for
the proposition that a plaintiff must have evidence they were
exposed to a defendant's product. See Bockrath v. Aldrich Chem.
Co., 21 Cal. 4th 71, 80 (1999) (noting that plaintiff could not
identify which of several separate products contributed to
injuries); Setliff v. E. I. Du Pont de Nemours & Co., 32 Cal.
App. 4th 1525, 1534 (1995) (same). Here, there is no question
Ms. Kinzler was "exposed" to the chairs provided by Beaufurn, to
include those with alleged defects. Though the exact chair
cannot be pinpointed, such precision is not required by the
cases cited. The asbestos cases cited by Beaufurn are no
different; they require some evidence, at the summary judgment
phase, that a plaintiff was exposed to the defendant's
particular brand of asbestos. See McGonnell v. Kaiser Gypsum
Co., 98 Cal. App. 4th 1098, 1103 (2002). There is no question
that Ms. Kinzler was "exposed" to a defective chair, since they
were in the restaurant when she was present.

- 13 -

It is also not "guesswork" that Ms. Kinzler was exposed specifically to an allegedly defective chair, because the Wharton Report is probative evidence that she was seated in a defective chair and not one of the more stable versions. The strongest case cited by Beaufurn illustrates that point. See Collin v. CalPortland Co., 228 Cal. App. 4th 582, 592 (2014). In Collin, summary judgment was affirmed in a case where a plaintiff was exposed to one of two of defendant's products: one contained asbestos, and one did not. Id. at 589. Because the two products were "similar in appearance, function, application and packaging," and the plaintiff did not personally remember which version was used, the plaintiff could not provide any evidence that the product he had used was the asbestos-containing product. Id. at 591-92. The court found that "on the evidence presented, guesswork is required for the trier of fact to conclude that the product Loren encountered was Colton gun plastic cement." Id. at 592. Unlike in Collin, however, the current evidence will not require "guesswork" on the part of the jury. Mr. Wharton concluded that, under the testing conditions, the allegedly defective chairs tipped forward when the others

- 14 -

did not, probable evidence that the chair Ms. Kinzler used was one of the allegedly defective versions.[8]

Finally, this court notes that the expert report is not the only evidence from which a jury could find that Ms. Kinzler's chair was one of the defective chairs. Mr. Wharton relied upon witness statements to determine whether there was a possible defect in one or more of the chairs. Similarly, the jury can rely upon a description of the accident as well as all circumstantial evidence to determine whether the facts of Ms. Kinzler's fall are consistent with, and therefore likely caused by, one of the defective chairs. A court, in determining a motion for summary judgment, does not weigh the evidence.

In sum, there is a genuine dispute as to a material fact, making summary judgment on the equitable subrogation claim inappropriate. See Carroll v. Litton Sys., Inc., 47 F.3d 1164, 1995 WL 56862, at *6 (4th Cir. 1995) (unpublished table

---

[8] It is for this reason that Izell v. Union Carbide Corp., 231 Cal. App. 4th 962 (2014), is also unpersuasive. There, a plaintiff tried to establish exposure to a specific asbestos product by relying on the fact that, over a period of time, defendant provided 8% of asbestos products to a factory that then provided products to a jobsite where plaintiff inhaled asbestos containing dust. Id. at 971. The court found such reasoning speculative since there were several steps in the exposure chain that were not established by that percentage alone. Id. By contrast, the Wharton Report is probative evidence that Ms. Kinzler was seated on a defective chair, because the defective chairs were prone to tip in the same way Ms. Kinzler fell.

decision) (finding summary judgment inappropriate when harmful product was known to be present and plaintiffs suffered health effects consistent with exposure). The court therefore finds it should deny Beaufurn's Motion for Partial Reconsideration.

## II. <u>BEAUFURN'S OBJECTION TO THE WHARTON REPORT</u>

Finally, the court notes that it is not barred from considering the Wharton Report. Beaufurn, in its reply, now argues that the Wharton Report cannot be properly considered on summary judgment, because it is not presently in a form admissible at trial. (<u>See</u> Doc. 82 at 3–4.) Liberty properly filed a surreply, (Doc. 83), under Local Rule 7.6, which states that "[i]f an evidentiary objection is raised by the moving party in its reply memorandum, the non-moving party may file a surreply memorandum pursuant to this subparagraph within seven (7) days addressing only the evidentiary objection." For two reasons, the court finds that it can consider the report.

First, a motion for reconsideration should not be used to "present a better and more compelling argument that the party could have presented in the original briefs." <u>Madison River Mgmt.</u>, 402 F. Supp. 2d at 619; <u>see also</u> <u>Johnson v. City of Fayetteville</u>, No. 5:12-CV-456-F, 2014 WL 3738310, at *4 (E.D.N.C. July 29, 2014); <u>Fleetwood Transp. Corp. v. Packaging Corp. of Am.</u>, No. 1:10MC58, 2011 WL 6217061, at *6 (M.D.N.C. Dec. 14, 2011); <u>Hinton</u>, 2011 WL 2142799, at *1; <u>cf.</u> <u>Jones v.</u>

- 16 -

Owens-Corning Fiberglas Corp. & Amchem Prods., Inc., 69 F.3d 712, 718 (4th Cir. 1995) (noting that failure to move to strike affidavits waived objection on appeal); Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 682 (1st Cir. 1994) ("Unless a party moves to strike an affidavit under Rule 56(e), any objections are deemed waived and a court may consider the affidavit.").[9] Beaufurn's arguments are not timely for purposes of summary judgment. See Broadvox-CLEC, LLC v. AT & T Corp., 98 F. Supp. 3d 839, 850 (D. Md. 2015) ("Notably, a motion for reconsideration is not a license for a losing party . . . to get a second bite at the apple." (internal quotation marks omitted)); Jiangment Kinwai Furniture Decoration Co. v. IHFC Props., LLC, No. 1:14-CV-689, 2015 WL 12911532, at *1 (M.D.N.C. May 8, 2015) ("[T]he Court will not reward or countenance second bites at the apple.").

Second, even if Beaufurn had raised the argument in a timely manner, the court likely still could have considered the

---

[9] Liberty contends that Beaufurn waived its objection to the report by not timely objecting during the pendency of the original summary judgment motion. (Doc. 83 at 6.) One case cited by Liberty seems to support that proposition. See Amatulli & Sons, LLC v. Great N. Ins. Co., Civil No. 3:06cv286, 2008 WL 90092, at *6 (W.D.N.C. Jan. 8, 2008). Amatulli & Sons, however, cited a Fourth Circuit case for support that dealt with waivers in the context of appellate arguments. See id. (citing Jones, 69 F.3d at 718.) Regardless of whether the objection has been waived, a motion for reconsideration is not the vehicle for new, better arguments.

report. "The summary judgment inquiry . . . scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993), holding modified by Stokes v. Westinghouse Savannah River Co., 206 F.3d 420 (4th Cir. 2000); Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016). "The court may consider materials that would themselves be admissible at trial, and the content or substance of otherwise inadmissible materials where the . . . party submitting the evidence shows that it will be possible to put the information into an admissible form." Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 538 (4th Cir. 2015), as amended (June 24, 2015) (internal quotation and citation omitted). Regarding expert reports, unless an unsworn expert report is accompanied by a sworn affidavit or declaration made under penalty of perjury, see id. at 539, they are often not considered on a motion for summary judgment, Doe v. Bd. of Educ. of Prince George's Cty., 982 F. Supp. 2d 641, 661 n.5 (D. Md. 2013), aff'd, 605 F. App'x 159 (4th Cir. 2015); In re Eternity Shipping, Ltd., Eurocarriers, S.A. for Exoneration from or Limitation of Liab.,

444 F. Supp. 2d 347, 363 n.55 (D. Md. 2006) (collecting cases).[10]
As noted by Humphreys & Partners, however, Fed. R. Civ. P. 56
permits a party to provide those assurances when challenged. See
Humphreys & Partners, 790 F.3d at 538; see also Fed. R. Civ. P.
56(e)(1) and (4) (stating that if a party fails to present
evidence in proper form, the court may "give an opportunity to
properly support or address the fact" or "issue any other
appropriate order"); Lee v. Offshore Logistical & Transp.,
L.L.C., 859 F.3d 353, 355 (5th Cir. 2017), as revised (July 5,
2017) ("The district court dismissed Captain Jamison's report
solely because it was not sworn without considering Lee's
argument that Captain Jamison would testify to those opinions at

---

[10] The court also notes that language of Rule 56(c) is broad.
"A party asserting that a fact cannot be or is genuinely disputed
must support the assertion by: citing to particular parts of
materials in the record, including depositions, documents,
electronically stored information, affidavits or declarations,
stipulations (including those made for purposes of the motion
only), admissions, interrogatory answers, or other materials
. . . ." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added); see also
Unterberg v. Corr. Med. Sys., Inc., 799 F. Supp. 490, 494 (E.D.
Pa. 1992) ("Where expert reports are produced in discovery and
represent the anticipated trial testimony of experts, it is
appropriate for the Court to consider the reports in determining
the existence of genuine issues of material fact."); 10A Charles
Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
2721 (4th ed. 2020) ("The court and the parties have great
flexibility with regard to the evidence that may be used in a
Rule 56 proceeding.").

trial and without determining whether such opinions, as testified to at trial, would be admissible.").

Had Beaufurn objected to the report at the proper time, rather than waiting until its reply brief on a motion to reconsider, Liberty would have had the opportunity to provide the requisite assurances that Mr. Wharton would testify to the contents of his report at trial. The court is not aware of any reason such assurance could not have been provided, nor has Beaufurn pointed to any such reason. The court is also not aware of any reason Mr. Wharton's testimony would not otherwise be admissible at trial.[11] For these reasons, the court finds it may properly consider the Wharton Report when analyzing Beaufurn's Motion for Partial Reconsideration.

## III. **CONCLUSION**

Based on the foregoing analysis, the court concludes that the finality of its original summary judgment Memorandum Opinion and Order, (Doc. 76), should not be disturbed.

---

[11] Though Beaufurn also claims it will challenge the report on <u>Daubert</u> grounds, (Doc. 82 at 9 n.6), no such challenge is presently before this court, (<u>see</u> <u>id.</u> (arguing the report "will not survive a <u>Daubert</u> challenge <u>when</u> made" (emphasis added)).) Without argument or briefing on that subject, the court is not in a position to conclude the Wharton Report is inadmissible on <u>Daubert</u> grounds.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Reconsideration, (Doc. 79), is **DENIED.**

This the 10th day of June, 2020.

_____
United States District Judge