## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LIBERTY INSURANCE UNDERWRITERS, )
INC., )
                   )
           Plaintiff, )
                   )
           v. )           1:16CV1377
                   )
BEAUFURN, LLC, )
                   )
           Defendant. )

## MEMORANDUM OPINION AND ORDER

    This case comes before the Court on the "Motion to Compel Production of Documents" (Docket Entry 90) (the "First Motion") by Beaufurn, LLC (the "Defendant") and "Defendant's Motion to Conduct *In Camera* Review, Compel Deposition Testimony, and Exclude Evidence of Damages" (Docket Entry 110) (the "Second Motion"). For the following reasons, the Court will grant the Second Motion in part, deny the Second Motion in part as moot, and deny the First Motion as moot.[1]

---

    1 The undersigned United States Magistrate Judge enters an order rather than a recommendation because "motions to compel discovery" under the Federal Rules of Civil Procedure constitute "[n]ondispositive matters [which] may be referred to a magistrate judge [for rulings] without the parties' consent," Mvuri v. American Airlines, Inc., 776 F. App'x 810, 810-11 (4th Cir. 2019) (citing Fed. R. Civ. P. 72(a)), cert. denied, ___ U.S. ___, 140 S. Ct. 1227 (2020). Similarly, as a general proposition, "[an] order disposing of [a] Rule 37 motion for sanctions is undoubtedly a nondispositive matter [for purposes of] Rule 72." Kebe ex rel. K.J. v. Brown, 91 F. App'x 823, 827 (4th Cir. 2004).

BACKGROUND

The instant dispute arose when Defendant, during discovery, attempted to obtain documents and information from Liberty Insurance Underwriters Inc. (the "Plaintiff"), in connection with Plaintiff's contractual and equitable-subrogation claims against Defendant. By way of brief summary, Defendant sold chairs to the Cheesecake Factory ("TCF"), and Janet Kinzler ("Kinzler"), a TCF patron, sustained injuries when she fell from one such chair. (Docket Entry 52 (the "Operative Complaint"), ¶ 11.) Kinzler sued TCF for negligence (id., ¶ 18), and TCF and Plaintiff, TCF's insurer, (as well as another insurer not a party here) ultimately settled with Kinzler (id., ¶¶ 28-29). In this action, Plaintiff has sought to recover from Defendant (i) the expenses Plaintiff incurred by defending TCF in Kinzler's suit and (ii) the portion of Kinzler's settlement that Plaintiff paid on TCF's behalf. (See id., ¶¶ 38-41 (contractual indemnity for defense expenses), ¶¶ 42-45 (contractual indemnity for settlement), ¶¶ 46-49 (equitable contribution), ¶¶ 83-88 (breach of contract for defense expenses), ¶¶ 89-91 (breach of contract for settlement).)[2]

---

2 After the parties filed cross-motions for summary judgment, the Court (per United States District Judge William L. Osteen, Jr.) denied in part and granted in part both motions. In particular, Judge Osteen concluded that TCF included with certain purchase orders "Terms and Conditions" that "required [Defendant] to carry commercial general liability insurance of a specified amount and type and to indemnify . . . TCF, for damage 'arising out of, or in connection with the use of any Product provided by [Defendant].'"
(continued...)

The First Motion challenges Plaintiff's invocation of attorney-client privilege and the work-product doctrine in response to several of Defendant's requests for production of documents ("Document Requests"). (See Docket Entry 90, ¶¶ 4-7; see also Docket Entries 90-1 (copy of Defendant's second set of Document Requests), 90-2 (copy of Plaintiff's responses to second set of Document Requests), 90-3 (privilege log), 92 (supporting memorandum).) More specifically, Defendant has asserted that its defense against Plaintiff's equitable-subrogation claim necessitates the production of materials that Plaintiff has refused to provide. (See Docket Entry 92 at 4-5.) In that regard, Defendant has argued that the protections of the attorney-client privilege and work-product doctrine remain subject to waiver, given

---

2(...continued)
(Docket Entry 76 at 4 n.1 (quoting Docket Entry 52-8 (TCF Purchase Order No. 5616 dated Dec. 3, 2007)).) However, such interpretation only applied to purchase orders that TCF sent Defendant on or before January 15, 2007. (Id. at 24-25 (granting Plaintiff summary judgment insofar as "the terms and conditions attached to TCF's purchase orders controlled the contracts between TCF and [Defendant]").) After that date, Defendant used a "signature sheet [that] made acceptance of TCF's offers expressly conditional on TCF's assent to new terms." (Id. at 25.) Because TCF never provided such assent, "no contract was formed until performance" (id.), and only price and quantity, the "terms on which the parties had expressly agreed" (id.) governed contracts after January 15, 2007. (See id. at 25-29 (granting Defendant "summary judgment for any claims premised upon a breach of [conflicting insurance and indemnification] provisions").) Judge Osteen further clarified that, despite the fact that the Operative Complaint alleges "equitable contribution" (Docket Entry 52, ¶¶ 46-49), "Plaintiff intended to bring an equitable[-]subrogation claim against [Defendant]" (Docket Entry 76 at 33).

that the Document Requests pertain to the reasonableness of the settlement in the Kinzler suit and whether, as a matter of equity, Plaintiff may recover that amount from Defendant. (See id. at 5-12.) The parties failed to resolve their dispute by means of a telephonic "meet and confer" conference on November 5, 2020. (Docket Entry 90, ¶ 8.) Accordingly, Defendant has "request[ed] . . . an Order requiring [Plaintiff] to fully respond to all [Document R]equests . . . regarding settlement, settlement strategy, legal strategy, and punitive damages from the underlying suit." (Docket Entry 92 at 12.)

In response, Plaintiff has contended that the Court should deny the First Motion because (i) Defendant "fail[ed] to identify the specific discovery responses and documents at issue" (Docket Entry 93 at 7 (standard capitalization applied)), (ii) Defendant sought relief in an untimely manner (id. at 9-11), and (iii) "Plaintiff provided full and complete responses to [the relevant Document Requests]" (id. at 12 (standard capitalization applied)). In doing so, Plaintiff stated:

> [T]he crux of Plaintiff's equitable[-]subrogation claim, as is relevant here, is that [Defendant] contributed to the harm suffered by [] Kinzler as a joint tortfeasor under an equitable[-]indemnification theory. Under this theory of liability, the "claimed loss" sought to be shifted from [Plaintiff] to [Defendant] will be commensurate with the percentage of fault that is allocated to [Defendant]. This could, but may not necessarily be, the entire amount Plaintiff paid in settlement of the Underlying Action. If [Defendant] is determined to be a joint tortfeasor, no significant amount of proof will be required to demonstrate that

4

> [Defendant] is primarily liable and that justice requires
> that its percentage of the amount Plaintiff paid in
> settlement should be entirely shifted from Plaintiff to
> [Defendant] as it will have been adjudicated to be at
> fault.

(Id. at 16–17.)  Defendant replied.  (See Docket Entry 96.)

The Court (per the undersigned United States Magistrate Judge) set a hearing on the First Motion for January 27, 2021 (Text Order dated Jan. 19, 2021), and directed Plaintiff to file a copy of its initial disclosures (and any supplementation) in advance of that hearing (Text Order dated Jan. 26, 2021).  Plaintiff complied. (See Docket Entry 102.)  As to damages, Plaintiff's initial disclosure states as follows: "Plaintiff alleges damages of $3,803,123.34. [] Kinzler's claims were settled for the sum of $4,375,000, of which Plaintiff paid the sum of $3,558,284.39. Plaintiff paid defense costs of $244,838.95.  Pre- and post-judgment interest at the rate of 10% per annum."  (Id. at 12.)[3]

During the hearing, the undersigned addressed the scope of the First Motion, explaining that Defendant appeared to have sought relief with respect to two different sets of Document Requests: Document Requests 45, 46, 50, 52, 53, and 54 (from the second set) as well as Document Request 57 (from the third set).  (See Minute

_____

3  In other words, Plaintiff asserted that Defendant should bear 100 percent of the settlement and defense costs that Plaintiff incurred in connection with Kinzler's claims.

5

Entry dated Jan. 27, 2021.)[4] Defendant agreed, clarifying that the Document Requests at issue relate to three aspects of the underlying litigation: the decision not to involve Defendant in the Kinzler suit, the decision to have TCF accept liability in that suit, and the effect of Kinzler's proposed amended complaint, including a punitive-damages claim, on the settlement. (See id.)

Thereafter, the undersigned questioned the parties about Document Request 57, which asks for "[t]he invoices and bills submitted to [Plaintiff] by the attorneys representing and defending TCF in the [Kinzler] lawsuit" (Docket Entry 93-1 at 93). (See Minute Entry dated Jan. 27, 2021.) Plaintiff had objected to that request on the basis of "the attorney-client privilege, work[-]product doctrine and/or mediation privileges" and stated that "[a]ll potentially responsive documents that are subject to such privileges were listed on Plaintiff's previously produced [p]rivilege [l]og." (Docket Entry 93-1 at 93.) During the hearing, Defendant acknowledged that it had received some invoices and bills and represented that, except for Plaintiff's privilege-based objections, it lacked any grounds to believe that Plaintiff had withheld responsive documents. (See Minute Entry dated Jan.

---

4 The Clerk's Office audio-recorded the hearing. (See Minute Entry dated Jan. 27, 2021.) In preparing this Memorandum Opinion, the undersigned used that recording to confirm exactly what transpired, including (in some instances) by writing down verbatim quotations. The description that follows above includes some such quotations in order to provide as full a picture as possible without delaying matters to obtain a transcript.

27, 2021.)  The undersigned orally granted the First Motion in part, directing Plaintiff to review the privilege log to determine the existence of documents responsive to Document Request 57.  (See id.)  The undersigned further ordered Plaintiff, by February 2, 2021, either to (i) revise its response to Request 57 if it identified no such documents, or (ii) indicate which privilege log documents Plaintiff had withheld as concerns Document Request 57.  (See id.)  The undersigned directed Defendant, by February 5, 2021, to file a notice stating whether Defendant continued to seek relief as to Document Request 57.  (See id.)[5]

Next, the undersigned turned to Document Request 54, which covers "[a]ll documents and things regarding, addressing, and/or discussing why [Plaintiff] is taking a position in the present lawsuit inconsistent with the . . . position that it took, or which the attorneys it hired to represent TCF took and with which [Plaintiff] agreed, in the [Kinzler] lawsuit" (Docket Entry 90-1 at 9).  (See Minute Entry dated Jan. 27, 2021.)  Defendant conceded the overbreadth of Document Request 54 as drafted and explained that Defendant sought documents concerning why TCF accepted liability despite its position in the Kinzler suit that neither the premises nor the chairs qualified as unsafe.  (See id.)  After Defendant acknowledged that other Document Requests (particularly

_____

5  The record does not demonstrate the parties' compliance with the foregoing orders.  (See Docket Entries dated Jan. 27, 2021, to present (lacking any notice filed by Defendant).)

Document Requests 45 and 53, and perhaps 46) cover that same topic, the undersigned denied the First Motion as to Document Request 54. (See id.)

Having identified and narrowed the Document Requests at issue, the undersigned took up the parties' arguments in connection with the First Motion. In particular, the undersigned noted that Defendant had failed to sufficiently develop its contention that "[c]orrespondence and communications in the [Kinzler suit] between TCF and its counsel are not protected by any attorney-client privilege [Plaintiff] may assert" (Docket Entry 92 at 4) and thus declined to grant Defendant relief on that ground (see Minute Entry dated Jan. 27, 2021). As concerns Plaintiff's arguments, the undersigned concluded that (i) the meet-and-confer had clarified the scope of the First Motion, (ii) the privilege log fails to identify which documents, if any, pertain to which Document Requests, and (iii) Defendant justifiably had waited to pursue the First Motion in light of the parties' agreement to stay discovery pending resolution of other issues in the case. (See id.) The undersigned thus elected not to deny the First Motion on any of Plaintiff's proffered bases. (See id.) The pertinent question then became whether the privilege log identifies documents responsive to Document Requests 45, 46, 50, 52, and 53, as to which no privilege (or work-product protection) applies. (See id.)

8

After inquiring of Defendant about its positions concerning the applicability of the attorney-client privilege and the work-product doctrine, the undersigned questioned Plaintiff about (i) how Plaintiff intended to preserve the attorney-client privilege and work-product protection given its inclusion on the witness list of attorneys involved in the Kinzler suit, and (ii) why Plaintiff need not disclose its rationale for contending (as it did in its initial disclosure) that Defendant bears full responsibility for the entire amount of the Kinzler settlement paid by Plaintiff. (See id.) On the former subject, Plaintiff eventually expressed its willingness to remove all attorneys from its witness list. (See id.) The undersigned ordered Plaintiff to supplement its initial disclosures consistent with that stipulation. (See id.)

As far as its damages computation, Plaintiff asserted that documents relating to its rationale qualify as work product and that conversations with counsel about such rationale fall within the scope of the attorney-client privilege. (See id.) However, Plaintiff declined to explain (in response to repeated questioning from the undersigned) why Plaintiff need not disclose its basis for contending Defendant must bear the entire loss (i.e., the full settlement amount paid by Plaintiff), despite apparently acknowledging that Defendant merely "contributed" to the loss via the sale of an allegedly defective chair. (See id.)

9

Following the foregoing exchange, the undersigned stated that "[Plaintiff wa]s frustrating the discovery process by refusing to provide information about how and why 100 percent of the settlement costs should be shifted, as a matter of equitable subrogation, to [Defendant]" (id.).  In that regard, the undersigned stated that Plaintiff had (i) lodged unsustainable objections during a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Rule 30(b)(6)"), and (ii) provided an inadequate damages computation in its initial disclosures.  (See id.)  As to the latter point, the undersigned quoted from Plaintiff's initial disclosures, noting the lack of "any analysis of what facts support [Plaintiff's] computation of damages" (id.).  To correct those deficiencies, the undersigned ordered the parties to take the following "interim steps" (as a precursor to any in camera inspection of the documents in the privilege log or other relief Defendant had requested):

(1) "[Plaintiff must] provid[e] a proper disclosure as to the computation of damages as required by [Federal] Rule [of Civil Procedure] 26" ("Rule 26") (id.);

(2) "[Plaintiff must] prepare a new privilege log that addresses specifically which documents . . . in the [existing] privilege log . . . are responsive to [Document Requests 45, 46, 50, 52, and 53]" (id. (referring to Docket Entry 90-3)); and

(3) "[Defendant may] draft five contention interrogatories that [Plaintiff] will have to answer" (id.).

The undersigned instructed that Plaintiff's supplemental damages computation must explain the basis for the percentage of settlement costs that, in Plaintiff's view, Defendant must bear and that the contention interrogatories should elicit from Plaintiff "its contentions," as well as "the factual bases supporting those contentions" (id.). Underscoring the need for Plaintiff to "provide a legitimate computation of damages which includes analysis of how the relevant facts lead to that dollar figure" and "give legitimate answers to reasonable contention interrogatories," the undersigned described possible consequences if Plaintiff failed to comply, to include "production of documents that are on the privilege log and . . . a further Rule 30(b)(6) deposition." (Id.) The hearing concluded with the undersigned imposing a deadline of February 5, 2021, for (i) an updated privilege log, (ii) Plaintiff's responses to Defendant's contention interrogatories, and (iii) Plaintiff's supplemental initial disclosures. (See id.) Additionally, the undersigned directed the parties, by February 8, 2021, "to file a joint status report . . . identifying any outstanding disputed issues and any requests they have for a remedy as to those disputes" (id.).

Consistent with the foregoing orders, the parties timely filed a joint status report (Docket Entry 104) (the "Report"), attaching

as exhibits a copy of Defendant's contention interrogatories with Plaintiff's responses (Docket Entry 104-1), updated privilege logs (Docket Entries 104-2, 104-3), and a copy of Plaintiff's supplemental initial disclosures (Docket Entry 104-4). The Report indicates that the parties "held a telephone conference on February 8, 2021 to discuss th[e] Report and the documents served by [Plaintiff]" (Docket Entry 104, ¶ 6). "During th[at] discussion, each party had the opportunity to discuss the appropriateness of [Plaintiff]'s responses, and the parties could not reach agreement as to (a) whether the responses were sufficient and appropriate, (b) whether the responses accorded with the Order of [the undersigned] . . ., and (c) whether [Plaintiff]'s responses warrant further involvement from the Court." (Id., ¶ 7.)

In particular, Defendant asserted that Plaintiff had failed to "comply with the Court's orders to respond in good faith" in answering Defendant's contention interrogatories and supplementing the damages computation in its initial disclosures. (Id., ¶ 8.) Defendant further expressed its "plan[] to request [that] the Court conduct an *in camera* review of the responsive documents identified on [Plaintiff]'s updated privilege log, . . . review [Plaintiff]'s responses to [Defendant's] 'contention interrogatories' and updated initial disclosures for appropriateness and sufficiency, and . . . order a new [Rule] 30(b)(6) deposition of [Plaintiff]." (Id.) For its part, Plaintiff stated that it had responded

12

appropriately, "contend[ed] that the issue for the Court to determine is whether [Plaintiff] has waived the attorney-client privilege and work[-]product protections under the circumstances of this case," and maintained that no such waiver had occurred. (Id., ¶ 9.)

Thereafter, the parties jointly moved to continue the then-scheduled April 2021 trial (Docket Entry 107, ¶ 1), indicating that discovery issues remained unresolved (id., ¶¶ 4-7) and expressing uncertainty about "whether Defendant need[ed] to file a new Motion to Compel in connection with the Report and the [above-referenced] dispute[s]" (id., ¶ 7). The undersigned issued a Text Order (i) noting that Defendant had failed to seek additional relief despite having stated in the Report its "plan" to do so, and (ii) establishing a briefing schedule for "any motion regarding matters addressed in [the] Report." (Text Order dated Mar. 2, 2021.) Defendant timely filed the Second Motion, which asks

> th[e] Court (1) to conduct an *in camera* review of responsive but allegedly privileged documents from Plaintiff, . . . (2) to order production of those same documents if relevant and appropriate, (3) to order an additional Rule 30(b)(6) deposition . . . [during which Plaintiff] is prohibited from instructing its witness not to answer certain questions, and (4) to exclude evidence of damages from admission at trial.

(Docket Entry 110 at 1; see also Docket Entry 111 (supporting memorandum).) Plaintiff responded in opposition (Docket Entry 114), and Defendant replied (Docket Entry 115).

13

**I. Relevant Standards**

**A. Computation of Damages**

Rule 26 requires that litigants provide initial disclosures to one another, to include "a computation of each category of damages claimed by the disclosing party — who must also make available for inspection and copying as under [Federal] Rule [of Civil Procedure] 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . . ." Fed. R. Civ. P. 26(a)(1)(A)(iii); see also Majdalani v. Legacy Bank, No. 06–1317, 2007 WL 2694043, at *2 (D. Kan. Sept. 11, 2007) (unpublished) ("The [initial disclosure] shall include specific dollar amounts and the computations supporting the amounts requested."). Although Rule 26 does not define "computation," it nonetheless "contemplates some analysis," City & Cnty. of San Francisco v. Tutor-Saliba Corp., 218 F.R.D. 219, 221 (N.D. Cal. 2003). In that regard, "courts . . . require more than a mere dollar amount to satisfy the computation requirement." Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n, No. 3:15-cv-1300, 2016 WL 3452734, at *1 (D.S.C. June 24, 2016) (unpublished). "Put summarily, [ P]laintiff needs to provide [ D]efendant[] with an initial estimate as to [Plaintiff's] claimed damages and at least some analysis of how the relevant facts lead

14

to that dollar figure." <u>Pressman v. Publix Super Mkts., Inc.</u>, No. 06-61350-CIV, 2007 WL 9700541, at *1 (M.D. Fla. May 3, 2007) (unpublished) (internal quotation marks omitted).

## B. Sanctions

Federal Rule of Civil Procedure 37 ("Rule 37") authorizes the Court to sanction a party for failing to comply with a discovery order. <u>See</u> Fed. R. Civ. P. 37(b)(2)(A) ("If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders."). "[Although] sanctions imposed pursuant to Rule 37(b) must be in response to a failure to comply with a court order, such order may be oral and need not be in writing." <u>Snead v. Automation Indus., Inc.</u>, 102 F.R.D. 823, 828-29 (D. Md. 1984).

Appropriate sanctions for violation of a discovery order may include

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) <u>prohibiting the disobedient party from supporting</u> or opposing <u>designated claims</u> or defenses, <u>or from introducing designated matters in evidence</u>;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order . . . .

15

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii) (emphasis added); see also
Fed. R. Civ. P. 37(b)(2)(C) ("Instead of or in addition to the
orders [listed in Rule 37(b)(2)(A)], the court must order the
disobedient party, the attorney advising that party, or both to pay
the reasonable expenses, including attorney's fees, caused by the
failure, unless the failure was substantially justified or other
circumstances make an award of expenses unjust."). In deciding
what Rule 37 sanctions to impose, "[t]he [C]ourt must determine
(1) whether the non-complying party acted in bad faith, (2) the
amount of prejudice that noncompliance caused the adversary,
(3) the need for deterrence of the particular sort of
non-compliance, and (4) whether less drastic sanctions would have
been effective." Anderson v. Foundation for Advancement, 155 F.3d
500, 504 (4th Cir. 1998).

## II. Analysis

On February 8, 2021, Plaintiff supplemented the damages
computation in its initial disclosures as follows:

> [] Kinzler's claims were settled for the sum of
> $4,375,000, of which Plaintiff paid the sum of
> $3,558,284.39.
>
> 1. Damages Based on [Defendant]'s Breach of its
> Contractual Obligations to Name TCF as an Additional
> Insured
>
> [Defendant] breached its contractual obligation to
> name . . . TCF . . . as an additional insured on a
> liability insurance policy that was required to be
> primary and not contributory to TCF's insurance pursuant
> to the parties' contract created by TCF's purchase orders
> dated January 15, 2007 and earlier. Such coverage was to

16

be in the amount of $2,000,000 per occurrence and was not to "be cancelable or amended by [Defendant] except upon thirty (30) days written notice to" TCF by [Defendant]'s insurer. [Defendant]'s primary liability policy in place at the time of [] Kinzler's claim had per occurrence limits of $1,000,000 and its excess policy had limits of $4,000,000 per occurrence. Both policies were written by Cincinnati Insurance Company. [] Kinzler's case was resolved for a total of $4,375,000. Of that amount, TCF paid $316,715.51, [another non-party insurer] paid $500,000 and [Plaintiff] paid $3,558,284.39. [Plaintiff]'s post-tender defense costs were $61,554.56. Had [Defendant] named TCF as an additional insured on its policy, Plaintiff would have had no indemnity obligation in the Kinzler matter as the majority of the loss would have been the obligation of Cincinnati. Accordingly, Plaintiff's damages as the result of [Defendant]'s failure to name TCF as an additional insured were $3,619,838.95.

In the alternative, if the Court determines that [Plaintiff]'s damages are limited to [Defendant]'s contractual obligation to name TCF on a policy of insurance in the amount of $2,000,000, then the following damages are claimed. Subsequent to exhaustion of the $2,000,000 limits, a total of $2,375,000 would have remained for satisfaction by TCF's self-insured retention of $500,000, [the non-party insurer]'s excess policy of $500,000 and [Plaintiff's] umbrella policy. [Plaintiff]'s indemnity obligation would have been $1,375,000 and thus, its damages with regard to indemnity were $2,183,284.39 ($3,558,284.39-$1,375,000). [Plaintiff] also would not have been required to pay defense costs in the underlying action which totaled $61,554.56 for total damages of $2,244,838.95.

2. Damages Based on [Defendant]'s Role as a Joint Tortfeasor

In the alternative, [Plaintiff] seeks damages commensurate with [Defendant]'s share of liability for [] Kinzler's economic damages up to a maximum of the $3,558,284.39 it contributed to the settlement and based on amounts and allocations to be determined at trial. In the underlying litigation, [] Kinzler claimed that her economic losses were $4,036,040.76 broken down as follows: past and future loss of income $734,434; medical expenses not paid by workers' compensation $209,521.48;

17

workers' compensation lien $119,982.44; out of pocket expenses $25,921.44; and future costs of health care $2,946,181.40.  For purposes of illustration only, if [] Kinzler's economic damages are found to have been $3,000,000 and [Defendant] is found 60% liable for [] Kinzler's injuries, then [Plaintiff] seeks damages in the amount of $1,800,000.

Pre- and post- judgment interest at the rate of 10% per annum.

(Docket Entry 104-4 at 6–8.)

Via the Second Motion, Defendant has challenged the adequacy of the damages computation in Plaintiff's supplemental disclosures, asserting in pertinent part that

[Plaintiff]'s second method of calculating damages provides no additional information in response to [the undersigned]'s order. [Plaintiff] avoids specifying the amount of damages beyond "damages commensurate with [Defendant]'s share of liability" for [] Kinzler's damages.  [Plaintiff] attempts to dress up its vague damages claim by breaking the total amount sought into its various components, but [Plaintiff] makes no attempt to address the question [the undersigned] asked of it during the [January] hearing; namely, what percentage of fault is [Plaintiff] asserting is attributable to [Defendant].  As such, [Defendant] moves the Court to order [Plaintiff] to provide a more specific statement of damages sought.  In the alternative, and as a result of [Plaintiff]'s failure to comply with [the undersigned]'s order and repeated failure to disclose the information, [Defendant] moves the Court to exclude any evidence as to damages in this action.

(Docket Entry 111 at 3 (internal citations omitted) (quoting Docket Entry 104-4 at 7).)

In response, Plaintiff has argued that the Court should decline to consider the Second Motion because Defendant failed to "certify it arranged the required conference with Plaintiff"

18

(Docket Entry 114 at 5), as mandated by Local Rule, see M.D.N.C. LR 37.1(a) (requiring movant who seeks discovery-related relief to file certificate attesting to "personal consultation and diligent attempts to resolve differences"). On the merits, Plaintiff has contended that the damages computation in its supplemental initial disclosure complies "with the Court's instruction" (Docket Entry 114 at 7 (emphasis added)) and Rule 26. (See id. at 6-8.) As concerns "Defendant's alternatively requested evidentiary sanctions" (id. at 8), i.e., the exclusion of Plaintiff's evidence on damages, Plaintiff has maintained that "the Court has not previously issued an order holding that Plaintiff's revised damages computation is deficient" (id.), such that Defendant may not seek sanctions under Rule 37(b)(2)(A). Defendant replied, addressing only the first of Plaintiff's arguments by explaining that the parties conferred telephonically on February 8, 2021, before the filing of the Report and the Second Motion. (See Docket Entry 115 at 1-3.)

Because Plaintiff's joint-tortfeasor damages computation does not comply with the undersigned's oral order, Rule 37(b)(2)(A) authorizes sanctions. In that regard, more than once during the hearing, the undersigned characterized the damages computation in Plaintiff's initial disclosures as inadequate. (See Minute Entry dated. Jan. 27, 2021.) As a result, the undersigned orally ordered Plaintiff to revise its initial disclosures by, inter alia,

19

explaining the basis for apportioning fault (and some percentage of the settlement costs) to Defendant and "provid[ing] . . . analysis of how the relevant facts lead to that dollar figure" (id.). Notwithstanding Plaintiff's contrary argument (see Docket Entry 114 at 8), noncompliance with the foregoing directive may result in sanctions under Rule 37(b)(2)(A), regardless of whether the Court issued a written order memorializing its instructions. See Snead, 102 F.R.D. at 828–29. Indeed, the parties properly recognized such instructions as "order[s]" in submitting the Report. (See Docket Entry 104, ¶ 3 ("As ordered by [the undersigned], [Plaintiff] served . . . revised initial disclosures[] on [Defendant] via e-mail on February 5, 2021." (emphasis added)).)

With respect to Plaintiff's second theory of damages ("based on [Defendant]'s role as a joint tortfeasor" (Docket Entry 104-4 at 7 (standard capitalization applied))), Plaintiff's supplementation falls short because it neither (i) identifies the portion of the settlement costs that Plaintiff contends Defendant must bear (whether 100 percent or something less), nor (ii) explains the factual basis for apportioning any particular percentage of fault to Defendant, for purposes of Plaintiff's equitable-subrogation claim. (See id. at 7–8.) Instead, the supplemental damages computation merely relates the total settlement amount, as well as the categories of damages that Kinzler claimed in the underlying action (see id.), and includes an "illustration" restating that

Plaintiff has sought to recover from Defendant a share of Kinzler's (undetermined) economic damages mirroring Defendant's (unspecified) degree of fault (see id. at 8). The vagueness of the foregoing disclosure (to include the "illustration," framed as a hypothetical) contravenes the undersigned's order to Plaintiff to provide a concrete damages figure and some analysis in support of that figure.

As mentioned above, Rule 37 declares that a violation of a discovery order authorizes the Court to "prohibit[] the disobedient party from supporting . . . designated claims," Fed. R. Civ. P. 37(b)(2)(A)(ii), as well as "from introducing designated matters in evidence," id. To assess the propriety of such sanction here, the Court has applied the relevant factors, Anderson, 155 F.3d at 504, and concludes that (i) Plaintiff has squandered numerous opportunities to remedy its deficient damages disclosure (thus evidencing bad faith), (ii) such behavior has significantly hindered Defendant's trial preparation, (iii) the Federal Rules of Civil Procedure do not countenance such obfuscation (which demands deterrence), and (iv) no lesser sanction appears adequate given that Plaintiff's non-compliant supplemental damages computation followed Plaintiff's repeated refusal to answer the undersigned's questions on that topic (during the hearing) and subsequent inability to resolve the issue by conferring with Defendant in connection with the Report.

Accordingly, because Plaintiff's supplemental initial disclosures offer inadequate details and analysis about the second theory of damages therein ("based on [Defendant]'s [alleged] role as a joint tortfeasor" (Docket Entry 104-4 at 7 (standard capitalization applied))), the Court (per the undersigned) will grant the Second Motion in part[6] and "prohibit[ Plaintiff] from supporting . . . [its joint-tortfeasor, equitable-subrogation] claim[] . . . or from introducing [a theory that Defendant bears liability for some percentage of the settlement and defense costs paid by Plaintiff] in evidence," Fed. R. Civ. P. 37(b)(2)(A)(ii). Additionally, because the Court finds no substantial justification for Plaintiff's noncompliance and no other circumstances make an award of expenses unjust, "the [C]ourt <u>must</u> order [Plaintiff], the attorney advising [Plaintiff], or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply]," Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

---

6    Rule 37(b) empowers the Court to remedy violations of discovery orders, regardless of whether a party moves for such relief.  <u>See</u> Fed. R. Civ. P. 37(b)(2)(A) (providing for sanctions without requiring party to seek relief by motion); <u>see also</u> Fed. R. Civ. P. 16(f)(1)(C) (describing judicial authority to sua sponte issue Rule 37(b) sanctions for disobedience of pretrial order).  As a result, contrary to Plaintiff's argument (<u>see</u> Docket Entry 114 at 4-5), the procedural impropriety of the Second Motion, if any, poses no bar to sanctioning Plaintiff under Rule 37(b).  In any case, Defendant's participation in the telephonic conference on February 8, 2021, during which the parties discussed the issues pertinent to the Second Motion (<u>see</u> Docket Entry 115 at 1-3), satisfies any applicable meet-and-confer requirement.  Thus, the Court declines to deny the Second Motion on the grounds that its filing violated Local Rule 37.1(a).

22

The foregoing resolution moots the remainder of Defendant's requests in the Second Motion and the whole of the First Motion. More specifically, the Second Motion asks that the Court review privilege log documents and order another Rule 30(b)(6) deposition. (See Docket Entry 110 at 1.) However, the documents that Plaintiff has withheld and the questions the Rule 30(b)(6) deponent previously declined to answer (on the instructions of counsel for Plaintiff) both concern whether and to what extent Plaintiff may shift the Kinzler settlement costs to Defendant by means of a joint-tortfeasor, equitable-subrogation claim.[7] The First Motion likewise seeks documents that pertain to Plaintiff's pursuit of an equitable-subrogation claim based on apportionment of fault to Defendant (see Docket Entry 92 at 5–12), which Plaintiff may not pursue in accordance with this Order.[8]

---

[7] Consistent with that understanding, Defendant has styled the evidentiary sanction as an "alternative" request. (See Docket Entry 111 at 6.)

[8] As concerns the first (contractual) theory of damages newly presented in Plaintiff's supplemental initial disclosures, Defendant has argued that "the Court [should] strike [such] method or theory . . . and enter an Order prohibiting [Plaintiff] from introducing any evidence regarding a purported breach of a contract entered into in 2007" (Docket Entry 111 at 3). Because the asserted deficiencies with the foregoing theory relate to issues other than Plaintiff's compliance with the undersigned's discovery order (subjecting Plaintiff to Rule 37(b)(2)(A) sanctions), the Court declines to address them here. Defendant may seek separate appropriate relief as to that aspect of Plaintiff's supplemental damages computation.

Case 1:16-cv-01377-WO-LPA   Document 130   Filed 05/25/21   Page 23 of 26

CONCLUSION

Plaintiff's damages computation in its supplemental initial disclosures fails to comply with the undersigned's order directing Plaintiff to clarify its contention as to the amount of its claimed damages for equitable subrogation premised on Defendant's alleged status as a joint tortfeasor and to provide some analysis to support that contention.

IT IS THEREFORE ORDERED that the Second Motion (Docket Entry 110) is GRANTED IN PART, such that (A) Plaintiff may not pursue an equitable-subrogation claim against Defendant based on or introduce evidence to support a joint-tortfeasor apportionment theory (as presented in the second part of Plaintiff's "Computation of Damages" (Docket Entry 104-4 at 7-8)), and (B) must pay Defendant's reasonable expenses, including attorney's fees, caused by Plaintiff's failure to comply with the Court's order requiring Defendant to properly supplement its initial disclosure regarding its damages computation, and DENIED IN PART AS MOOT, as to the remaining requests for relief therein.

IT IS FURTHER ORDERED that the First Motion (Docket Entry 90) is DENIED AS MOOT.

IT IS FURTHER ORDERED that, on or before June 1, 2021, Defendant shall serve Plaintiff with a statement of the reasonable expenses, including attorney's fees, caused by Plaintiff's failure to comply with the Court's prior order requiring Plaintiff to

24

properly supplement its initial disclosure regarding its damages computation. Failure by Defendant to comply with this order shall result in the denial of any expense-shifting.

**IT IS FURTHER ORDERED** that, on or before June 15, 2021, Plaintiff shall file EITHER (A) a notice agreeing to pay the expenses claimed by Defendant in the statement served on Plaintiff, OR (B) a memorandum of no more than five pages contesting the reasonableness of the amount of expenses claimed by Defendant, along with a certification that counsel for Plaintiff, on or before June 8, 2021, served a written summary of any objections to the reasonableness of the expenses claimed by Defendant on counsel for Defendant and that counsel for Plaintiff thereafter consulted in good faith with counsel for Defendant via telephone or in-person about those objections but the parties failed to reach agreement about the amount of Defendant's reasonable expenses. Failure by Plaintiff to comply with this order shall result in the awarding to Defendant of the expenses claimed in the statement served on Plaintiff, upon Defendant's filing of that statement with the Court.

**IT IS FURTHER ORDERED** that, on or before June 22, 2021, Defendant shall file any response of no more than five pages to any memorandum timely filed by Plaintiff. Failure by Defendant to comply with this order shall result in the denial of an award of any expenses contested by Plaintiff in its memorandum.

25

**IT IS FURTHER ORDERED** that, on or before June 29, 2021, Plaintiff may file any reply of no more than three pages to any response timely filed by Defendant.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 25, 2021